United States Courts
Southern District of Texas
FILED

DEC 05 2025

Nathan Ochsner, Clerk of Court

William LaVan Graves, III, pro se
31271 Shady Arbor Lane
Spring, TX 77386
512-638-1508, billgraves0911@gmail.com

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS
### CONROE DIVISION

| | |
|---|---|
| WILLIAM LAVAN GRAVES, III, Plaintiff, <br><br> vs. <br><br> ERIC MICHAEL WILLIE, individually; § <br><br> CHRISTOPHER MICHAEL GRANDINETTI, individually; § <br><br> TIMOTHY SULAK, in his official capacity as Judge of the 261st Judicial District Court of Travis County, Texas; § <br><br> JAMES L. ARTH, in his official capacity as Judge of the 261st Judicial District Court of Travis County, Texas; § <br><br> AMY KATHERINE GRAVES, individually; § <br><br> STATE BAR OF TEXAS, by and through its Executive Director and Board of Directors, in their official capacities; § <br><br> CHILD & FAMILY SUPPORT DIVISION of the TEXAS ATTORNEY GENERAL'S OFFICE, by and through the Attorney General of Texas, in his official capacity, <br><br> Defendants. | Case No.: _____ <br><br><br> **VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF – JURY DEMANDED** |

## INTRODUCTION

Plaintiff, a licensed fiduciary financial advisor for 25 years, upholding the highest standards of honesty, disclosure and integrity, relied on attorneys, Judges, and the State Bar, owing parallel duties to uphold justice. In his industry, a fiduciary advisor is mandated by protocol to escalate suspected ethical violations or fraud through a supervisor, chief compliance officer, or principal, and if unresolved or systemic, to regulators and, where warranted, to the SEC's Whistleblower Program. Here, Plaintiff reported fraud to attorneys, judges, and the State Bar, yet systemic fraud remains unresolved. If there is any federal jurisdiction question, on 12/06/2023 Plaintiff recorded Willie concerning Grandinetti's submission of fraudulent evidence, **"It's fraud!"** Willie not only admits it, he misrepresents with, **"Well, yeah, but there's nothing I can do on the fraud…"**

Now, a known fraud-tainted judgment stands. Ongoing garnishments, credit damage, and false arrears continue to strip Plaintiff of property, and damage his employability. He lost his retirement savings, his home, and—on paper—he appears a non-paying obligor, and financially irresponsible. However, his reports of fraud were timely, thorough, and credible, but were also fraudulently concealed along with exculpatory evidence, which was never presented in court.

1    Plaintiff does not seek appellate review or modification of any state-court judgment; rather,
2    he seeks damages and prospective relief for independent federal constitutional violations that
3    occurred outside judicial decision-making and after judgment. No modification, enforcement, or
4    construction of custody or support orders is requested.

5    On 12/06/2023, the full audio recorded meeting with attorney Eric Willie exposes that he and
6    attorney Christopher Grandinetti knowingly committed conscience-shocking extrinsic fraud,
7    suppressed exculpatory evidence, suborned and allowed aggravated perjury instead, concealed
8    the resulting due-process violations, and exposed his opinion that judicial bias contributed to
9    **$1.71 million** in harm **(Exhibit A, p. 341-349)**.

10    The day after Judge Sulak signaled disregard and planned destruction of Plaintiff's affidavit
11    exposing the following fraud, Willie substantiated the merits of the affidavit on 12/06/2023
12    **(Exhibit A, p. 341-349)**. For example, Grandinetti's material, undisclosed ABA Rule 4.2
13    violation led to a fraudulent Rule 11 Agreement and caused **liquidation of Plaintiff's $159,000**
14    **401(k)** to pay a $20,000 quid pro quo bribe under threat of prolonged litigation. The fraudulent
15    "agreement" was then abused in trial against Plaintiff. Worse, Grandinetti denied it with, **"Mr.**
16    **Graves, I didn't have you do anything."** Ms. Graves shows her ignorance in trial with, **"...it**
17    **was highly illegal that I did not know."** After attorneys refused to disclose the violation,
18    Plaintiff reported them to the State Bar beginning in 04/2023. During the investigations, both
19    attorneys fraudulently denied the allegations. After dismissal and on 12/06/2023 in the recording,
20    Plaintiff confronts Willie, **"You know that Chris Grandinetti violated Rule 4.02."** Willie's
21    recorded response is, *"I know,* **but there is nothing I can do about that...because the court,**
22    **the judge, already made his ruling" (Fully exposed in Exhibit A, p. 90-151).**

23    Separate from the 401(k) fraud, Plaintiff also reported **$230,926.29 in child support fraud**
24    to the State Bar based on fraudulent concealment of exculpatory evidence. While possessing and
25    concealing those well-documented records of financial and child support paid to Ms. Graves,
26    attorneys suborned and allowed aggravated perjury to stand as evidence instead. In a post-trial
27    hearing, Grandinetti claimed, **"Mr. Graves has not provided any documentation of direct**
28    **payments,"** yet on 12/06/2023 Willie is recorded stating, **"I gave them that."** Confronted for
29    allowing Grandinetti to submit known fraudulent evidence, Willie states, **"Well, what do you**
30    **want to do, file a motion for him lying? There's no such thing."** Plaintiff responded, **"It's**
31    **fraud."** Willie says, **"Well,** *yeah, but there's nothing I can do on the fraud..."* **(Fully exposed**
32    **in Exhibit A, p. 15-24, 34-87, 153-191, 197, 199-200, 206-232, 243-261).**

33    On 11/14/2023, just after the State Bar dismissed their cases, Willie chilled future reporting
34    of fraud by Plaintiff with, **"If you do that again, then I'll fight back against you" (Exhibit A,**
35    **p. 12),** conduct within **18 U.S.C. § 1513(e)** (retaliation for providing truthful information
36    regarding possible federal offenses). This is simply egregious, self-protective fraud.

37    Plaintiff diligently continued following his fiduciary protocol to expose financial fraud by
38    attorneys, taking steps with Judges. When Willie failed to expose Grandinetti on **12/28/2020,**
39    Plaintiff emailed Judge Arth proof of child support paid as agreed, and proof that Grandinetti had
40    failed to include Judge Arth's ordered reduction of child support in the summary order which
41    Grandinetti agreed to create **(Exhibit A, p. 170-172, 190-191)**. Post-trial, on **10/29/2021** Plaintiff
42    reported fraud upon the court to Judge Arth which was causing a financial emergency, also

1  exposing child psychological abuse which was unreported by attorneys (**Exhibit A, p. 312-313**).
2  On **05/06/2022**, Plaintiff sent an email, copying both attorneys and Judge Sulak (**Exhibit A, p.**
3  **243-244**) to expose Grandinetti's false denial of receipt of child-support payment evidence in
4  trial and post-trial hearings. On **07/05/2022**, Judge Sulak acknowledged the email may expose
5  **"…things I knew incorrectly,"** but dismissed it as **"Inappropriate…unless the court asks for**
6  **it"** (**Exhibit A, p. 245-246**). **Willfully blind, he** based his decision on fraud and applied what
7  became **$230,926.29** in fraudulent arrears. So, Plaintiff pursued a costly Request for Findings of
8  Fact and an appeal on **09/14/2022** (**Exhibit A, p. 321**) while Willie misled Plaintiff to "wait" for
9  a decision, only later telling Plaintiff that he did not include fraud and perjury in the appeal.

10  Without corrective action from attorneys, Judges or the State Bar, nor an appellate ruling, to
11  formally preserve his fraud disclosures, Plaintiff filed sworn affidavits with the Travis County
12  District Clerk on **05/25/2023** and **07/07/2023**. The District Clerk told Plaintiff no action would
13  be taken, so Plaintiff delivered affidavits directly to the judges' clerk of courts on **11/09/2023**
14  and **01/03/2024**. Each affidavit was notarized, file-stamped, and included a certificate of service
15  which identified dates and methods of delivery to counsel. Once filed, affidavits became court
16  records subject to Texas record-retention and judicial-conduct obligations and could not lawfully
17  be ignored or destroyed absent adjudication and a ruling on the merits. Canon 3 of the Texas
18  Code of Judicial Conduct obligates judges to act on credible evidence of attorney misconduct,
19  and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), requires courts to
20  remedy "fraud which prevents the judicial machinery from performing in the usual manner."

21  On their judicial letterhead, acting under color of state law, Judges Sulak and Arth
22  acknowledged that Plaintiff's affidavits were "filed with the clerk of courts," but asserted they
23  were ex parte and claimed certificates of service were missing. As in his profession, Plaintiff
24  retains records and has notarized copies and a USPS-postmarked sealed envelope showing the
25  opposite (**Exhibit A, p. 335-338, 353-356**). Judges, rather than clarifying, or directing re-service,
26  setting a hearing, or issuing an order to strike, they issued an administrative ultimatum: withdraw
27  the affidavits or they "will be destroyed" (**Exhibit A, p. 351-352, 357-358**). No corresponding
28  order or docket entry reflects judicial adjudication of those filings (**Exhibit A, p. 359**). That
29  escalation—from a purported procedural concern to threatened destruction of sworn, file-
30  stamped evidence—constitutes a non-judicial, administrative act that obstructed Plaintiff's
31  access to the courts and suppressed credible evidence of attorney misconduct. Such record-
32  management decisions fall outside absolute judicial immunity. The judicial defendants acted
33  without subject matter jurisdiction over administrative record-management functions, removing
34  immunity. See *Forrester v. White*, 484 U.S. 219, 229 (1988); *Davis v. Tarrant Cnty.*, 565 F.3d
35  214, 222–23 (5th Cir. 2009). And because they were undertaken under color of state law, *Lugar*
36  *v. Edmondson Oil Co.*, 457 U.S. 922, 939–40 (1982), **and** *Dennis v. Sparks*, 449 U.S. 24, 27–29
37  (1980), permit prospective declaratory and injunctive relief to halt ongoing constitutional
38  violations. These administrative interventions give the appearance of partiality, prohibited by **28**
39  **U.S.C. § 455(a)–(b)(1)** and appears as structural bias requiring recusal under *Caperton v. A.T.*
40  *Massey Coal Co.*, 556 U.S. 868, 883–84 (2009) and **Liljeberg v. Health Servs. Acquisition**
41  **Corp.**, 486 U.S. 847, 859–60 (1988). **Pickering v. Bd. of Educ.**, 391 U.S. 563, 571–73 (1968)
42  confirms, speech exposing corruption is the apex of constitutional protection and whistleblowing
43  is a protected First Amendment petitioning activity. Even while facing judicial officers, Plaintiff
44  exercised reasonable diligence at all times.

1    Willie masked both attorneys' misconduct with legal misrepresentation, repeatedly promised
2    redress in the next step of the case—even doing so on 12/06/2023 as he exposed the depth and
3    pervasiveness of the fraud (**Exhibit A, p. 341-349**). But, when Plaintiff did attempt to expose
4    fraud, whether in emails, trial testimony, post-trial statements, reports to regulatory authorities,
5    or affidavits, Plaintiff was silenced or dismissed and credible evidence of fraud, uninvestigated.
6    It finally culminated in Judge Sulak's letter on **12/05/2023** threatening destruction of Plaintiff's
7    affidavit (**Exhibit A, p. 351**), Willie's admissions on 12/06/2023 (**Exhibit A, pp. 341–349**),
8    Judge Arth's 01/04/2024 refusal to review the 01/03/2024 affidavit, simply characterizing it as
9    improper (**Exhibit A, p. 358**), and the State Bar of Texas' refusal to reopen its investigation in
10   12/2024 despite receiving excerpts of Willie's admissions, claiming res judicata over the
11   Supremacy Clause (**Exhibit A, p. 360-364**). Attorneys acted jointly with judges through
12   administrative record suppression. This revealed a pattern of concealment and obstruction
13   triggering tolling and accrual under *Holmberg v. Armbrecht*, **327 U.S. 392, 397–98 (1946)** ("a
14   court of equity abhors a fraud," tolling applies until discovery through diligence); *Rotella v.*
15   *Wood,* **528 U.S. 549, 560–61 (2000)** (fraud and concealment delay accrual subject to equitable
16   tolling); and *King-White v. Humble Indep. Sch. Dist.,* **803 F.3d 754, 762–63 (5th Cir. 2015)**
17   (equitable tolling where defendants conceal both the wrongful act and its resulting injury).

18   This was not a one-off error but a multi-year pattern: undisclosed Rule 4.2 contact leading to
19   a coerced 401(k) liquidation, a void ab initio and thus, fraudulent Rule 11 "agreement" annexed
20   as legitimate in trial, suppression of exculpatory payment records, subornation of aggravated
21   perjury, a fraud-inflated child-support arrearage, judicial threats to destroy affidavits exposing
22   that misconduct, and regulatory refusal to act even after receiving a recorded confession.

23   Plaintiff **is not seeking modification of a domestic-relations order.** He seeks redress for
24   independent constitutional torts—extrinsic fraud, coercion, deprivation of property and liberty
25   without due process, administrative retaliation, and suppression of whistleblower activity—
26   claims distinct from custody or support. Under *Marshall v. Marshall,* **547 U.S. 293, 312–13**
27   **(2006)**, the domestic-relations exception does not apply to independent tort claims. This is not a
28   review of a judicial decision but exposure of systemic fraud infringing constitutional rights. The
29   **Rooker–Feldman doctrine, Younger abstention,** and judicial immunity do not bar this suit.
30   *Truong v. Bank of Am.,* **717 F.3d 377, 382 (5th Cir. 2013);** *Kougasian v. TMSL,* **359 F.3d**
31   **1136, 1140–41 (9th Cir. 2004)**. The admitted and documented attorney misconduct requires
32   federal intervention under *In re Snyder,* **472 U.S. 634.** Prospective relief is available under *Ex*
33   *parte Young,* **209 U.S. 123 (1908),** and *Pulliam v. Allen,* **466 U.S. 522 (1984).**

34   **All claims remain timely.** Plaintiff relied on attorneys, Judges and regulatory authority
35   guidance at the state level, diligently exhausting all avenues to expose fraud as he respected the
36   process, and although *Patsy v. Board of Regents,* **457 U.S. 496, 500–12 (1982)** did not require
37   this §1983 Plaintiff to exhaust state remedies before seeking federal relief, Plaintiff respectfully
38   did so. Plaintiff exercised continuous, reasonable diligence to uncover and expose the fraud, but
39   same Defendants guiding him to trust them and wait affirmatively concealed material facts and
40   misrepresented the availability of legal remedies. Plaintiff a fiduciary himself did not, could
41   not and/or would never reasonably expect nor understand the full scope of coordinated pervasive
42   misconduct by both attorneys as they misled and misrepresented—and the extent to which state
43   actors were administratively buttressing that misconduct—until Willie's **12/06/2023** recorded
44   admissions, and the State Bar's December 2024 refusal to reopen its investigation after receiving

1    those admissions. For years, Plaintiff was affirmatively misled: told there would be future
2    redress, then, that there was "no remedy for fraud in civil court," was misled that his evidence
3    was never received, and told that his affidavits were procedurally improper rather than
4    investigated on the merits. Throughout, he acted diligently: repeatedly supplying exculpatory
5    records to his counsel and opposing counsel when it became necessary, emailing judges with
6    proof of fraud, filing affidavits with the clerk, appealing State Bar dismissals, and escalating to
7    judicial and regulatory authorities. Under longstanding equitable-tolling doctrine, limitations do
8    not run in favor of defendants who actively conceal their own wrongdoing or misrepresent the
9    availability of legal remedies. See *Bailey v. Glover,* **88 U.S. 342, 349–50 (1874)** (fraudulent
10    concealment tolls limitations where defendants prevent discovery despite plaintiff's efforts);
11    *Holmberg v. Armbrecht,* **327 U.S. 392, 397–98 (1946)** ("a court of equity abhors a fraud,"
12    tolling applies until fraud can be uncovered through diligence); *Holland v. Florida,* **560 U.S.**
13    **631, 652–54 (2010)** (plaintiff not penalized where attorney misconduct blocks discovery); *TRW*
14    *Inc. v. Andrews,* **534 U.S. 19, 27–28 (2001)** (duress and concealment justify tolling); *Klehr v.*
15    *A.O. Smith Corp.,* **521 U.S. 179, 194–96 (1997)** (affirmative efforts to uncover fraud satisfy
16    diligence); *Rotella v. Wood,* **528 U.S. 549, 560–61 (2000)** (fraud and concealment delay
17    accrual); *King–White v. Humble ISD,* **803 F.3d 754, 762–63 (5th Cir. 2015)** (concealment of
18    wrongdoing and injury tolls limitations). Unfortunately, diligence required a recorded admission
19    from a licensed attorney. These facts squarely place this matter within this Court's jurisdiction
20    under **42 U.S.C. § 1983 and Fed. R. Civ. P. 60(d)(3).**

21        Taken together, these acts constitute extrinsic fraud—conduct that prevents a fair adversarial
22    trial. See *United States v. Throckmorton,* **98 U.S. 61, 65–68 (1878);** *Rozier v. Ford Motor Co.,*
23    **573 F.2d 1332, 1338–40 (5th Cir. 1978)** (fraud upon the court and concealment of critical
24    evidence require vacatur). Attorneys also know that such conduct is not merely unethical: it
25    aligns with federal predicate offenses, of **mail and wire fraud** (18 U.S.C. §§ 1341, 1343, 1346),
26    **witness and evidence tampering** (18 U.S.C. §§ 1512, 1519), **obstruction of justice** (18 U.S.C.
27    § 1503), and **conspiracy to deprive rights** (18 U.S.C. §§ 241–242), relying on interstate
28    communications and false representations to a tribunal—the pattern the Supreme Court
29    recognized as sufficient for RICO predicates where false representations are directed to courts
30    and agencies. See *Bridge v. Phoenix Bond & Indem. Co.,* **553 U.S. 639, 647–49 (2008).** These
31    federal criminal statutes are cited solely to describe the pattern and gravity of the misconduct
32    and, where applicable, as RICO predicates; no independent private cause of action is asserted
33    under them. The power of the State was the force-multiplier for this misconduct. The void ab
34    initio Rule 11 "agreement," falsified arrearage figures, and suborned perjury were not merely
35    private wrongs; they were adopted and enforced through state-court judgments, wage-
36    garnishment orders, and custody determinations. But for action and inaction under color of law,
37    the State would not have entered or continued to enforce the challenged orders. This joint misuse
38    of judicial machinery brings the conduct squarely within "color of law" for § 1983 purposes.

39        The inherent authority of this Court is now invoked. See *In re Snyder, 472 U.S. 634, 643–46*
40    *(1985)* (attorney misconduct that undermines the administration of justice violates fundamental
41    standards of fairness and the public's trust); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* **322**
42    **U.S. 238, 246 (1944)** (fraud by officers of the court "defiles the judicial process" and requires
43    federal intervention); *Chambers v. NASCO, Inc., 501 U.S. 32, 46–51 (1991)* (courts may
44    sanction "fraudulent and brazen tactics" that corrupt the judicial process); *County of Sacramento*

1   *v. Lewis, 523 U.S. 833, 846–47* (1998) (conduct that "shocks the conscience" violates
2   substantive due process). Exhibit A is a sworn summary of the concealed extrinsic fraud.

3        Plaintiff's home, livelihood, professional reputation as a fiduciary were destroyed, and he
4   lost freedoms with his children based on suborned aggravated perjury as well (**Exhibit A. p.**
5   **271-315**). This was not in the best interest of the children. No state actor intervened. Each used
6   the authority of office to delay action and suppress the truth. The conscience-shocking abdication
7   of duty under color of law advanced personal and institutional gain by fraudulent concealment
8   which delayed justice, crushing Plaintiff's career and finances, yet it continues, and continues to
9   undermine the judiciary's appearance of integrity—an interest the Supreme Court has described
10  as foundational to public trust. *Caperton v. A.T. Massey Coal Co.*, **556 U.S. 868, 889 (2009).**

11       As a father, he was effectively deprived of meaningful participation in his daughters' lives
12  during formative years—from ages 12–19 and 9–18—because custody and access determinations
13  were made and enforced on the basis of fraud-tainted evidence and concealed exculpatory
14  records (**Exhibit A, p. 271-317**). *Plaintiff does not ask this Court to re-adjudicate custody* or
15  issue a new parenting order; rather, he seeks compensatory damages for the concrete emotional
16  and relational harm caused by being wrongfully portrayed as an unsafe or non-supportive parent
17  and being excluded from his children's upbringing due to orders procured by extrinsic fraud.

18  **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO),**

19       Defendants' coordinated acts constitute violations of the **Racketeer Influenced and**
20  **Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961(1), (4)–(5), 1962(c)–(d).** Only
21  attorney-defendants Willie and Grandinetti are named under RICO. Willie's recorded admissions
22  and attorneys' actions establish an informal association-in-fact enterprise, recognized under
23  *United States v. Turkette*, **452 U.S. 576, 583 (1981), and** *Boyle v. United States*, **556 U.S. 938,**
24  **946–48 (2009),** operating as a continuing unit to commit, conceal, and profit by extrinsic fraud.

25       The association in fact began with a concealed ABA Rule 4.2 violation, commercial bribery,
26  and fraudulent securing of document execution to liquidate a **$159,000 401(k)** and vexatious
27  litigation thereafter, then coordinated submission of a void Rule 11 Agreement in trial, falsely
28  claiming the document was signed by Plaintiff and silencing his attempts to expose fraud, then
29  subornation of false testimony in Ms. Graves' ignorance, then fraudulent denials of Plaintiff's
30  allegations to the State Bar. This is well documented (**Exhibit A, p. 89-151, especially 98-123**).
31  Considering subsequent financial and child support fraud, attorneys withheld evidence; financial
32  records, text messages, and audio recordings from 2017 through 2022 (**Exhibit A, p. 33-88, 152-**
33  **249, especially 206-212**) which Ms. Graves testified to reviewing pre-trial. Attorneys simply
34  substituted suborned aggravated perjury, inflating arrearage to **$230,926**. These proximate acts
35  resulted in predicate offenses of **mail and wire fraud** (18 U.S.C. §§ 1341, 1343, 1346),
36  **extortion, bribery, obstruction of justice** (18 U.S.C. § 1503), **witness/evidence tampering** (18
37  U.S.C. §§ 1512, 1519), and **conspiracy to deprive constitutional rights** (18 U.S.C. §§ 241–
38  242). Mail and wire fraud predicates apply when false representations target tribunals, *Bridge v.*
39  *Phoenix Bond & Indem. Co.*, **553 U.S. 639, 647–49 (2008).**

40       Willie's and Grandinetti's conduct satisfies the "operation or management" test. *Reves v.*
41  *Ernst & Young*, **507 U.S. 170, 179–85 (1993)** (liability attaches to those who "operate or

1  manage" an enterprise's affairs); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007)
2  (defendants played a direct, managerial role in a fraudulent scheme).

3     Although judicial officers and the State Bar are not RICO defendants, inaction, refusal to
4  review evidence and affidavits, and their coercive, administrative correspondence—including
5  demanding Plaintiff remove lawfully filed affidavits under threat of destruction—provided
6  structural support, enabling the enterprise to function, were performed under color of state law.
7  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939–40 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–
8  29 (1980). Judicial immunity does not extend to such administrative acts. *Forrester v. White*,
9  484 U.S. 219, 229 (1988); *Davis v. Tarrant Cnty.*, 565 F.3d 214, 222–23 (5th Cir. 2009). Such
10 refusals to investigate attorney misconduct, and/or invoking res judicata to bury constitutional
11 violations, is precisely the conduct condemned in *In re Snyder*, 472 U.S. 634, 643–46 (1985).

12    The attorneys' knowing, intentional participation, with foreseeable consequences resulted in
13 injuries—retirement savings liquidation, fraudulent arrears, home sale (Grandinetti claiming Ms.
14 Graves' portion), reputational and credit damage, and ongoing wage garnishment—directly and
15 proximately caused by the racketeering scheme, satisfy *Holmes v. SIPC*, 503 U.S. 258, 268–74
16 (1992). These acts further satisfy the continuity requirement under *H.J. Inc. v. Nw. Bell Tel. Co.*,
17 492 U.S. 229 (1989) because judgements based in fraud remain and garnishment continues.

18    Lawful institutions were weaponized to enforce fraud-tainted orders and maximize Title IV-
19 D incentive payments—**conduct antithetical to Congress's purpose of serving the best**
20 **interests of children**. No child benefited, and Plaintiff, a licensed fiduciary financial advisor,
21 was financially devastated by the scheme. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322
22 U.S. 238 (1944) (federal courts must overturn judgments procured through deliberate fraud);
23 *Chambers v. NASCO*, 501 U.S. 32 (1991) (inherent power to sanction pervasive abuse).

24    Predicate acts, administrative concealment, and enforcement of fraudulent orders toll
25 limitations under *Rotella v. Wood*, 528 U.S. 549 (2000), and *Holmberg v. Armbrecht*, 327 U.S.
26 392 (1946), based on the RICO pattern into 2024. Civil RICO claims are governed by the four-
27 year limitations period in *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143
28 (1987) and remain timely, given continued concealment, threats, and administrative obstruction
29 against a litigant, virtually abandoned by his attorney, while delaying discovery and redress. The
30 enterprise had structure, duration, and purpose beyond one-off litigation.

31 **RETALIATORY OR DEFAMATORY COUNTERCLAIMS:**

32    Retaliatory or defamatory counterclaims must satisfy the pleading and evidentiary standards
33 of **Fed. R. Civ. P. 8, 12(b)(6), and 56, and Rule 11(b)** requiring that filings be made in good
34 faith, supported by fact and law—not for harassment or retaliation. *In re Lipsky*, 460 S.W.3d
35 579, 590–91 (Tex. 2015) (requiring "clear and specific" evidence, rejecting conclusory
36 allegations) is instructive: bare accusations without concrete proof are legally insufficient.

37    Here, Plaintiff presents concealed exculpatory evidence and proof of receipt by licensed legal
38 representatives; audio recordings, text messages, emails, transaction records. Court transcripts
39 proving subornation of aggravated perjury, and affidavits in sealed, USPS postmarked envelopes

1  with certificates of service—all demonstrate a factual basis for his claims. This evidentiary
2  threshold must be met in counter claims or would fail at the **Rule 12(b)(6) and Rule 56 stages.**

3      Federal law protects individuals who disclose potential fraud or corruption in government-
4  linked programs. **18 U.S.C. § 1513(e)** makes it a federal offense to retaliate against a person
5  truthfully providing information about possible federal crimes, attempting to stop misuse of
6  public funds. Willie's threats to "fight back" if re-reported, judicial letters directing a litigant to
7  remove or risk destruction of lawfully filed affidavits, and a regulatory body's invocation of res
8  judicata, burying proof of constitutional violations, undermine the right to petition and to speak
9  on matters of public concern. See *Pickering v. Bd. of Educ.*, **391 U.S. 563 (1968).** Federal courts
10  condemn litigation tactics which chill such petitioning. See *Colson v. Grohman*, **174 F.3d 498,**
11  **512–13 (5th Cir. 1999)** (liability for retaliation against protected speech); *Keystone v.*
12  *Houghton*, **801 F.2d 1053, 1060** (5th Cir. 1986) (affirming sanctions for filings made to harass).

13      **28 U.S.C. § 1927** authorizes sanctions when counsel unreasonably and vexatiously multiply
14  the proceedings—conduct Plaintiff has endured in the state action, reflected in the docket. **Rules**
15  **12(b)(6) and 56** function as procedural analogues to anti-SLAPP protections in federal practice,
16  permitting early dismissal of meritless or retaliatory "SLAPP-like" counterclaims. With evidence
17  herein, and federal interest in safeguarding whistleblowers and integrity reports, counterclaims
18  lacking element-by-element factual support would be considered frivolous, retaliatory, and
19  subject to dismissal and sanctions under Rule 11, § 1927, and this Court's inherent authority.

20  **FEDERAL JURISDICTION, VENUE, AND REMAND CONCERNS**

21      This Court has federal question jurisdiction under **28 U.S.C. § 1331 and 42 U.S.C. § 1983;**
22  civil-rights jurisdiction under **28 U.S.C. § 1343(a)(3)–(4);** and supplemental jurisdiction under §
23  1367(a) for related state-law predicates including commercial bribery and perjury. Plaintiff seeks
24  prospective declaratory and injunctive relief against the judicial defendants to halt ongoing
25  constitutional violations, remedies expressly authorized by *Ex parte Young*, **209 U.S. 123, 159–**
26  **60 (1908),** and not barred by judicial immunity. Plaintiff also seeks compensatory, consequential,
27  and punitive damages against the non-judicial defendants (attorney defendants) for violations of
28  § 1983, RICO, and related federal statutes. Domestic-relations claims are not asserted, and under
29  *Marshall v. Marshall*, **547 U.S. 293 (2006),** fraud-on-the-court claims fall outside the domestic-
30  relations exception. Federal courts must remedy fraud upon a court independently. *Hazel-Atlas*
31  *Glass Co. v. Hartford-Empire Co.*, **322 U.S. 238, 244–46 (1944).** Plaintiff does not assert a
32  private right of action to enforce Title IV–D program standards. Here, Plaintiff instead alleges
33  that Defendants' misuse of Title IV–D enforcement mechanisms—including reliance on
34  knowingly false arrearage data and OCSE–157 reporting—produced independent constitutional
35  violations (due process deprivations, property loss, and retaliation). Under Blessing v. Freestone,
36  520 U.S. 329 (1997), oversight of programmatic compliance belongs to federal administrators.
37  Federal oversight exists where misuse of federally funded IV–D mechanisms results in
38  constitutional violations. Returning this matter to the jurisdiction where judges threatened
39  destruction of affidavits, ignored sworn evidence, and failed to investigate attorney misconduct
40  would frustrate Hazel-Atlas's mandate and invite renewed suppression of evidence.

41      Venue is proper in the **Southern District of Texas, Houston Division**, under **28 U.S.C. §**
42  **1391(b)(1)–(2)** because (1) all Defendants reside in Texas, and (2) a "substantial part" of the

events and resulting injuries occurred in Spring/Houston, where Plaintiff lived, worked, and experienced the downstream effects of the fraud. Beginning in early 2021—and throughout the period during which fraud was committed and concealed—Plaintiff was transitioning to and then primarily residing within the Houston Division, maintaining an apartment in Austin for custody purposes. By 2022, he lived predominantly in Spring/Houston while the concealment continued, and by 2023, as fraud peaked, he lived full-time in Spring and worked in Houston.

The Fifth Circuit recognizes that the locus of constitutional and economic injury supports venue for § 1983 and RICO claims. The injuries from Defendants' misconduct—retirement depletion, false arrearage, wage garnishment, credit damage, licensure challenges, reputational harm in the financial industry, and daily economic and professional pressures arising from fraud-tainted orders—occur in the Houston Division. Current and former employers, compliance officers, supervisors, creditors, and related collection and enforcement proceedings triggered by the fraudulent judgment—are located in this Division, giving the Houston federal courts a direct judicial interest in adjudicating the underlying constitutional violations.

Remand or transfer to Travis County—where misconduct originated and implicated officials remain institutionally connected—would raise **Fourteenth Amendment** due-process concerns. The Supreme Court prohibits forcing a litigant before actors whose neutrality is reasonably questioned. *Caperton v. A.T. Massey Coal Co.*, **556 U.S. 868, 884–89 (2009).** Plaintiff cannot be compelled to return to a jurisdiction where officials acknowledged, refused to review and/or threatened administrative destruction of affidavits exposing fraud, ignoring recorded evidence of constitutional violations, and purposely or negligently facilitated attorney misconduct candidly admitted. Requiring a whistleblower to litigate before the very authorities whose administrative acts suppressed fraud reports "creates a serious risk of actual bias" and is barred by Caperton.

Continued damage to Plaintiff's credit and reputation by Defendants forced liquidation of Plaintiff's assets, loss of his home, wage garnishment, and collapse of credit and standing have caused his financial challenges to repeated, costly travel to, and litigation expenses in, Travis County. Venue rules cannot be applied to make court access prohibitively expensive for a victim of fraud. *In re Volkswagen of Am., Inc.*, **545 F.3d 304, 315–17 (5th Cir. 2008)** holds that transfer is improper where it merely shifts or *magnifies* hardship for a victim of fraud.

Venue in the **Southern District of Texas, Houston Division**, is therefore proper under **§ 1391(b)(1)–(2)**, constitutionally necessary under the Fourteenth Amendment, and essential to protect Plaintiff from further retaliation, administrative obstruction, and bias. Remand or transfer would undermine the integrity of these proceedings, erode public confidence, and expose a whistleblower to the same actors who suppressed evidence and concealed fraud while acting under color of state law. The Houston Division is the only venue consistent with federal law, constitutional neutrality, and the judiciary's duty to remedy fraud on the court.

**PARTIES**

**Plaintiff.** William LaVan Graves III ("Plaintiff") is a natural person and citizen of the United States who resides in Montgomery County, Texas.

1  **Defendant Eric Michael Willie.** Eric Michael Willie is a Texas-licensed attorney who resides in
2  or conducts business in Travis County, Texas, and may be served at 3755 S. Capital of Texas
3  Hwy., Ste. 295, Austin, TX 78704. He is sued in his individual capacity.

4  **Defendant Christopher Michael Grandinetti.** Christopher Michael Grandinetti is a Texas
5  licensed attorney who resides in or conducts business in Travis County, Texas, and may be
6  served at 1000 Heritage Center Cir., Round Rock, TX 78664, sued in his individual capacity.

7  **Defendant Judge Timothy Sulak.** Timothy Sulak is a Judge of the 261st Judicial District Court
8  of Travis County, Texas. He is sued for prospective declaratory and injunctive relief in his
9  official capacity only and may be served at the Travis County Civil Courthouse,
10 1700 Guadalupe St., 4th Floor, Austin, TX 78701.

11 **Defendant Judge James Arth.** James Arth is a Judge of the 261st Judicial District Court of
12 Travis County, Texas. He is sued for prospective declaratory and injunctive relief in his official
13 capacity only and may be served at the Travis County Civil Courthouse, 1700 Guadalupe St. 4th
14 Floor, Austin, TX 78701.

15 **Defendant Amy Katherine Graves.** Amy Katherine Graves is an individual residing in
16 Travis County, Texas, and may be served at 5608 Sunny Vista Dr., Austin, TX 78749. She is
17 sued in her individual capacity.

18 **Defendant State Bar of Texas.** The State Bar of Texas is an arm of the Judicial Branch of the
19 State of Texas headquartered at 1414 Colorado St., Austin, TX 78701. It is sued through its
20 Executive Director and Board of Directors for prospective declaratory and injunctive
21 relief. Service may be effected on Executive Director Trey Apffel at that address.

22 **Defendant Child & Family Support Division of the Texas Attorney General's Office.** The
23 Child & Family Support Division ("CFSD") is the Title IV-D child-support enforcement arm of
24 the Office of the Attorney General of Texas. CFSD is sued through Attorney General
25 Ken Paxton, in his official capacity, for prospective declaratory and injunctive relief and may be
26 served at 300 W. 15th St., Austin, TX 78701. CFSD is sued through its IV-D Director, Reagan P.
27 Greer (or his successor), and may be served at 300 W. 15th St., Austin, TX 78701.

28 **FACTUAL ALLEGATIONS, RECORDED ADMISSION OF EXTRINSIC FRAUD:**

29    All recordings are lawful under **Tex. Penal Code § 16.02(c)(4)(A), 18 U.S.C. § 2511(2)(d)**
30 and repeatedly upheld in *Cook v. State*, **940 S.W.2d 623, 627 (Tex. Crim. App. 1996);** *United*
31 *States v. Ceballos-Torres*, **218 F.3d 409, 412-13 (5th Cir. 2000);** *Colson v. Johnson*, **645 F.3d**
32 **427, 433 (5th Cir. 2011); and the Supreme Court's rulings in** *United States v. White*, **401 U.S.**
33 **745, 751-53 (1971) and** *Lopez v. United States*, **373 U.S. 427, 439-40 (1963).**

34 **A. 401(k) Fraud:** Grandinetti initiated and acknowledged prohibited contact with a represented
35    party with, *"I shouldn't be talking to you without Eric,"* then diverted a scheduled child
36    support hearing, instead soliciting a $20,000 quid pro quo bribe requiring liquidation of
37    Plaintiff's 401(k) to *"end the financial pain,"* and to secure an expedited trial date. Plaintiff,

a licensed fiduciary financial advisor, warned of severe taxes and penalties and requested a QDRO as was discussed with Ms. Graves. Grandinetti dismissed his concerns—and Plaintiff.

**Willie admits his absence on 12/06/2023,** but accepted Grandinetti's offer and within hours, filed a fraudulent Rule 11 Agreement with the district clerk without explicit consent from Plaintiff. Willie had "connived at his clients defeat" under Throckmorton, instead threatening Plaintiff with trial delay to coerce 02/15/2019 payment compliance, memorialized in the Rule 11 "Agreement." Then came one year of vexatious litigation **(Exhibit A, p. 133-144).**

Willie's admission on 12/06/2023 exposes, substantiates and links Grandinetti's violation to the fraudulent Rule 11 "Agreement" requiring 401(k) liquidation. The document, void ab initio, should never have been annexed in trial without disclosure of the violation. *Aoude v. Mobil Oil Corp.,* **892 F.2d 1115 (1st Cir. 1990)** (fraudulent documents require vacatur). On 12/06/2023 Willie exposes the coordinated scheme, corrupting the judicial process:

Willie:    "…you have to reimburse her [for the 401(k)], but that's not affecting you."

Graves:    **"You know that Chris Grandinetti violated Rule 4.02."** (ABA Rule 4.2)

Willie:    ***"I know,* but there is nothing I can do about that… because the court, the judge, already made his ruling."** (Exhibit A, p. 102-107)

In trial, on 06/22/2021, Grandinetti silenced Plaintiff about the 401(k), and fraudulently denied being the impetus of the liquidation of the 401(k) as well (Exhibit A, p. 102):

Graves:    "I was trying to resolve this with her and **trying to give her the 401(k)."**

Grandinetti:    **"Mr. Graves, please don't expand…"**

Grandinetti:    "Mr. Graves, is this 401(k) – does it exist anymore?"

Graves:    "No, sir. I believe that's the one **you had me convert to an IRA…"**

Grandinetti:    **"Mr. Graves, I didn't have you do anything."**

Grandinetti presented the fraudulent Rule 11 Agreement. Willie allowed it without disclosure and helped Grandinetti avoid showing the ***unsigned*** signature page **(Exhibit A, 103-107):**

Grandinetti:    "Do you recognize this Rule 11 Agreement **that you signed?"**

Graves:    "…I don't know what Rule 11 --"

Grandinetti:    **"Well, it's a Rule 11 agreement that we agreed to when we had to go to court. So also on that day, you agreed to liquidate the 401(k)…"**

Willie's 12/06/2023 acknowledgement of Grandinetti's violation of ABA Rule 4.2 makes this exchange and Willie's failure to expose it conspiratorial. Then came Ms. Graves' testimony confirming her ignorance of the discussion, the agreement and liquidation:

Ms. Graves:    **"The 401(k), I'm hoping that hasn't been touched,** but now that it's been since January, who knows what's happened." (Exhibit A, p. 98)

1
2    **Ms. Graves:**    **"...it was highly illegal that I did not know."** (Exhibit A, p. 109)

3    In *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995), "Agreements made by attorneys
4    without the client's express authorization are not enforceable," yet Grandinetti continued as
5    Willie sat silently, concealing the fraud in trial on 06/23/2021 on page 67 of the transcript:

6    **Grandinetti:**    "And the Transamerica 401(k), the **evidence that has been admitted shows**
7                        **that there was $165,000** in 2018, correct?

8    **Ms. Graves:**    "Yes."

9    **Grandinetti:**    And you are **asking to be awarded one-half of the value of all of the money**
10                       **that existed at that time?"**

11   **Ms. Graves:**    "Yes."

12   *The result:* A $159,000 retirement account, plus taxes and penalties, pecuniary interest in
13   lost growth, plus, an additional $85,000 award was garnered based on extrinsic fraud and
14   attorneys violated their own agreement—"trial by 03/31/2019" occurred 06/22/2021.

15   **Authorities:** ABA Model Rule 4.2; TDRPC 4.02, 1.06; Tex. Penal Code §§ 32.43, 32.46; 18
16   U.S.C. §§ 1951, 1341, 1343, 1346, 1952 (extortion, bribery, fraudulent securing of document
17   execution, mail/wire fraud, honest-services fraud, racketeering); ABA Model Rule 1.7
18   (conflicts of interest); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) (unsupervised
19   contact with represented party; coercive and disciplinable); *United States v. Throckmorton*,
20   98 U.S. 61 (1878) (judgment void where attorney "connives at his client's defeat"); *Rozier v.
21   Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) (concealment of evidence mandates relief);
22   *Keystone Driller*, 290 U.S. 240 (1933) (fraud shall not be left without a remedy); *United
23   States v. Snyder* (per curiam) (unpublished), 766 F. App'x 262 (5th Cir. 2019) (fraudulent or
24   fabricated documents submitted to a court constitute "fraud on the court" requiring vacatur);
25   *United States v. Throckmorton*, 98 U.S. 61 (1878) (extrinsic fraud annuls decision/decree).

26   **B. Financial Fraud and Child Support Fraud:** The record shows that both attorneys engaged
27   in sustained, coordinated efforts to conceal well-organized, repeatedly updated and submitted
28   exculpatory financial records, and facilitate aggravated perjury while misleading the tribunal
29   pre-trial, in trial, and post-trial in hearings causing **$230,926.29** in child support fraud. From
30   2017-2021, Plaintiff made substantial financial support payments and provided ordered child
31   support by agreement with Ms. Graves. Although Plaintiff repeatedly provided Willie with
32   financial documentation and audio recordings, which Willie forwarded (**Exhibit A, p. 152-**
33   **232**), Grandinetti was allowed to mislead and Willie concealed it all until 12/06/2023.

34   Graves:    **"I handed you all of the discovery..."**

35   Willie:    *"I gave them that."*

36   On 12/06/2023, Willie's admission exposes a concealment scheme (**Exhibit A, p. 206-212**):

| | | |
|---|---|---|
| 1 | Graves: | **"The judge asked [Grandinetti] if he had received any proof of direct child** |
| 2 | | **support paid…[Grandinetti] said, "Nope, I've never received any of them."** |
| 3 | Willie: | "…I know you want to string Grandinetti up, but *it's not my issue."* |
| 4 | Graves: | **"It should be—you're my rep…the guy lied."** |
| 5 | Willie: | "Okay. **Well, what do you want to do, file a motion for him lying?** There's no such |
| 6 | | thing. **There's no such thing."** |

Willie, present when Grandinetti made these fraudulent statements 04/22/2022 in a post-trial hearing, failed to expose payments made and fraud (**Exhibit A, p. 206-212, especially 252**):

| | | |
|---|---|---|
| 9 | Grandinetti: | "The biggest issue we had during trial is that **there was no evidence presented of** |
| 10 | | **what direct payments were made…** and part of the issue is that **Mr. Graves has** |
| 11 | | **not provided any documentation of direct payments."** (Willie sat silently) |
| 12 | Grandinetti: | "Essentially **the numbers that I included and I presented in court, reflect all** |
| 13 | | **of the amounts that were paid,** that were ordered, and what has been…what the |
| 14 | | A.G. is reflecting as well." |

Although Plaintiff emailed proof to Grandinetti, Willie and Ms. Graves (**Exhibit A, 206-209**), Grandinetti continued to mislead in Willie's final hearing absence on 07/05/2022:

| | | |
|---|---|---|
| 17 | Grandinetti: | **"…the pay record at the Attorney General's office is not accurate** either |
| 18 | | because of payments that have not been reflected by Mr. Graves. And again, that |
| 19 | | **was supposed to be submitted to the court, which it never was.** *I don't have* |
| 20 | | *supporting documentation* which he claim – claims existed" (**Exhibit A, p. 252**). |

Grandinetti began to relent, but then continued to mislead in Willie's absence. Plaintiff then recorded Willie finally exposing the egregious fraud on 12/06/2023 (**Exhibit A, p. 348**):

| | | |
|---|---|---|
| 23 | Graves: | (Quoting Ms. Graves) "Bill I'm going to need you to take more from the IRA." |
| 24 | | (Plaintiff, quoting himself) "Hey, Amy, can I take more from the IRA? Hey, Amy, |
| 25 | | this is what's happening with the IRA" (**Plaintiff quoting Grandinetti**) "**Did Bill** |
| 26 | | **keep you informed of your financial condition…"** (Plaintiff quoting Ms. Graves) |
| 27 | | "**No."** |
| 28 | Willie: | **"I get it** and that's all going back for some credits." |
| 29 | Graves: | **"*IT'S FRAUD*!"** |
| 30 | Willie: | **"Well,** *yeah, but there's nothing I can do on the fraud…"* |
| 31 | Graves: | **"Help me understand that. Help me understand…"** |
| 32 | Willie: | **"There's no motion where I go in and say, 'this is fraud.'"** |

Willie abdicated his duties as an officer of the court and Plaintiff's legal representative, and was absent for two of four post-trial hearings. Willie is also admitting he knew of aggravated perjury yet allowed it to stand (**Exhibit a, p. 206-261**):

1 | Willie:  "Yeah, you want to go after her for… you don't have money to do that."

2 | Graves:  **"But this is aggravated perjury**—she admits to reviewing the recordings."

3 | Willie:  **"Yeah, but there's no charge I can file in family court for aggravated perjury…"**

4 | On 12/06/2023, Willie continues to misrepresent and abdicate his duties:

5 | Graves:  "She gets away with it. And nobody, nobody's going to do anything about that?"

6 | Willie:  **"There's not any civil motion that you can file for somebody for lying… there**
7 | **just isn't. There's not. I can't help you with that."**

8 | However, in trial on 06/22/2021 and 06/23/2021, recordings which contain in-depth
9 | discussions between Plaintiff and Ms. Graves concerning financial and child support, their
10 | financial condition, IRA withdrawals and the 401(k) have also admittedly been reviewed:

11 | **Grandinetti:**   **" I have heard all of the recordings." (06/22/2021 in trial)**
12 |

13 | **Willie:**        **"Have you -- you have listened to yourself on those tapes, right?"**

14 | **Ms. Graves:**    **"Most of them, yes." (06/23/2021 in trial)**

15 | Then, Willie begins to shed light on his relationship with Grandinetti, and blames litigants:

16 | Willie: **"Mr. Grandinetti and I get along well, it's the clients, they're not agreeable."**

17 | ***Applicable Rules & Authorities:***  ABA Model Rule 3.03, 8.4(c) (Failure to correct perjury in
18 | order to deceive the court). Texas Penal Code § 37.03 (Aggravated Perjury – based on Ms.
19 | Graves' testimony). 18 U.S.C. § 1622 (Subornation of Perjury). 18 U.S.C. § 1623 (False
20 | Declarations Before Court).  ABA Model Rule 1.7 (conflicts of interest); *United States v.*
21 | *Throckmorton*, 98 U.S. 61 (1878) (is defrauded by "an attorney who "fraudulently…connives
22 | at his defeat"; or "the attorney regularly employed corruptly sells out his client's interest to
23 | the other side").

24 | On 12/06/2023, Willie turns on Judge Sulak while defending and concealing for Grandinetti:

25 | Willie:  **"You got a judge that was not receptive to the case."**

26 | Willie:  "Well, he (Sulak) made that decision. **He made a bad decision."**

27 | Willie:  "And it just, it's, at some point **you got to put this to bed and say, '*I got [expletive]***
28 | ***by this judge.*"** There's only so many legal remedies I could do and move forward.'"

29 | ***Applicable Rules & Authorities:***  Willie's recorded admissions are not offered to impugn any
30 | judicial officer in this action, but rather to illuminate the conditions under which Plaintiff's
31 | due-process rights were adjudicated and chilled. When such admissions are considered
32 | alongside the judges' subsequent administrative conduct—acknowledging Plaintiff's
33 | affidavits as "filed with the clerk" while threatening their destruction unless withdrawn—
34 | they give rise to a legally cognizable appearance-of-partiality concern under **28 U.S.C. §**

1    455(a). That statute imposes an objective standard: recusal is required whenever
2    circumstances would lead a reasonable observer to question a tribunal's impartiality,
3    particularly where the conduct involves **administrative record-management decisions**, not
4    protected judicial acts. See **Forrester v. White, 484 U.S. 219, 229 (1988)**; **Davis v. Tarrant**
5    **Cnty., 565 F.3d 214, 222–23 (5th Cir. 2009)**.

6    Under **Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 884–89 (2009)**, due process is
7    violated where the facts create a "serious risk of actual bias," including circumstances that
8    compromise the structural assurances of neutrality. These circumstances underscore why
9    federal review is necessary and why transfer or remand to the original venue would itself
10   raise grave constitutional concerns.

11   Attorney, Willie, then hinders Plaintiff's attempts to pursue due process in the appeal:

12   Graves: "Did you allege perjury and fraud in the appeal?"
13   Willie: **"...Perjury and fraud are not what the appeal is about."**

14   At the time of this statement, Willie had actual knowledge of Grandinetti's undisclosed ABA
15   Model Rule 4.2 violation, the void Rule 11 Agreement submitted as authentic, the suppressed
16   exculpatory child-support payment records, and aggravated perjury at trial. Willie's
17   misrepresentation to Plaintiff misstated the scope of appellate review, which includes claims
18   of fraud, perjury, suppression of material evidence, and judgments procured by void or
19   fraudulent instruments. Willie's statement had the effect of deterring Plaintiff from raising
20   fraud-based appellate issues, delayed discovery of the underlying misconduct, and preserved
21   a judgment tainted by false evidence. This conduct constitutes knowing concealment by an
22   officer of the court and forms part of the pattern of extrinsic fraud, obstruction, and furthered
23   coordinated efforts to prevent judicial scrutiny **(Exhibit A, p. 320-323).**

24   *Applicable Rules & Authorities:* 18 U.S.C. §§ 1346 (honest services fraud), 1512(b), 1512(c)
25   (witness tampering, obstruction of justice, intimidation, corrupt persuasion, or destruction of
26   evidence); ABA Model Rules 1.1 (competent representation), 1.3 (reasonable diligence and
27   promptness); Holland v. Florida, 560 U.S. 631 (2010) (Plaintiff pursued his rights as
28   attorney's misconduct hindered it); Cantu v. Central Educ. Agency, 884 F.2d 562 (5th Cir.
29   1989) (bad actors cloaked in judicial orders, concealed evidence affecting due process).

30   **C. Threats after Plaintiff's Initial Report to the State Bar:** Willie conceals federal fraud and
31   threatens Plaintiff not to report it again on 11/14/2023:

32   Willie:   "All I'm sayin' is, don't do that [report Willie to the State Bar of Texas] again
33             because, if you're going to do it, **then I'll fight back against you** and I'm done."
34             (Exhibit A, p. 12)

35   *Applicable Rules & Authorities:* 18 U.S.C. § 1513(e) (retaliation for providing truthful
36   information of possible federal offenses). 18 U.S.C. §§ 875(d) (Recorded threats by phone to
37   injure property or reputation to silence Plaintiff to keep money taken in attorney's
38   fees), 1512(b) (Witness tampering by intimidation, threat, corrupt persuasion to delay or

1    prevent testimony in a potential proceeding); *United States v. Brock*, 502 F.3d 208 (5th Cir.
2    **2007**) (witness tampering, obstruction of justice); *In re Lipsky, 460 S.W.3d 579 (Tex. 2015)*
3    (threatens retaliation to thwart whistle blowing and rights to petition the government);
4    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (addresses continuances, ignoring rules
5    requiring sanctions, and power to remedy fraud).

6        **Let us not forget Plaintiff's children:** Willie blames Plaintiff for loss of custody after both
7    attorneys concealed aggravated perjury and Ms. Graves' involvement of children in the divorce:

8    Willie:    "…you cried like a little [expletive] baby in the [expletive] hearing and you looked
9              god [expletive] crazy… the judge said [expletive] this, I'm giving the children to her."
10   Graves:    "I was losing my children…"

11       These are all admitted subversions of due process as in **Herold v. Computer**
12   **Components Intl., Inc.**, 252 F. Supp. 499, 500 (M.D.N.C. 1966), ("discovery rules…should
13   avoid unnecessary testimony; trial should be a sincere search for the truth"). Plaintiff provided
14   organized, in-depth discovery, yet attorneys concealed/withheld it. This is egregious, as in
15   **Aoude v. Mobil Oil Corp. (1990)** (filing fraudulent documents), and **Chambers v. NASCO,**
16   **Inc.** (1991) (fraudulent litigation conduct beyond Rule 11 penalties granting inherent authority),
17   **Hazel-Atlas Glass Co. v. Hartford-Empire Co.** (1944) (fraudulent misrepresentation and
18   fabricated evidence), and **Rozier v. Ford Motor Co. (1978)** (concealing critical evidence), and
19   in **Kupferman v. United States (1962)** (suppression of evidence), **Oliver v. Home Indemnity**
20   **Co. (1972)** (known abuse of perjured testimony). The Judges' requests to remove evidence and
21   threatened destruction of affidavits, combined with Willie's statement, "[You] got [expletive] by
22   this judge," also creates the appearance of bias, as in **Liljeberg v. Health Services Acquisition**
23   **Corp. (1988)** (conflicts of interest and bias which undermines public confidence). The State Bar
24   of Texas received the quotes exposing constitutional rights violations, yet stood on res judicata.

25       This case certainly mirrors **United States v. Throckmorton, 98 U.S. 61, 65–66 (1878)** in
26   extrinsic fraud, exposing "there was in fact no adversary trial or decision of the issue in the case.
27   **Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud**
28   **or deception practised on him by his opponent,** as by keeping him away from court, **a false**
29   **promise of a compromise; or where an attorney fraudulently or without authority assumes**
30   **to represent a party and connives at his defeat; or where the attorney regularly employed**
31   **corruptly sells out his client's interest to the other side**—these, and similar cases which show
32   that there has never been a real contest in the trial or hearing of the case, are reasons for which a
33   new suit may be sustained to set aside and annul the former judgment or decree, and open the
34   case for a new and a fair hearing. See **Wells, Res Judicata, sect. 499; Pearce v. Olney, 20**
35   **Conn. 544; Wierich v. De Zoya, 7 Ill. 385; Kent v. Ricards, 3 Md. Ch. 392; Smith v. Lowry,**
36   **1 Johns. (N. Y.) Ch. 320; De Louis et al. v. Meek et al., 2 Iowa, 55.**

37       As the Supreme Court warned in **Keystone Driller Co. v. General Excavator Co., 290**
38   **U.S. 240, 245 (1933)**, equity will not leave "fraud and deceit… remediless." This Court has the
39   inherent authority to protect rights based on the Constitution of the United States of America.
40   Pursuant to the **Supremacy Clause, U.S. Const. art. VI, cl. 2**, the Constitution and laws of the
41   United States are "the supreme Law of the Land," binding on all state judges "any Thing in the

16

1   Constitution or Laws of any State to the Contrary notwithstanding." State courts, state agencies,
2   and state officers cannot enforce practices, orders, or procedures that conflict with federal rights
3   secured under the Constitution or statutes enacted pursuant thereto. Defendants' actions—
4   including concealment of fraud, deprivation of due process, and misuse of federal Title IV-D
5   incentive funds—stand in direct conflict with federally protected rights and the lawful
6   administration of federal programs. Such state-level misconduct cannot displace or override the
7   Plaintiff's rights guaranteed by the U.S. Constitution and binding federal law.

8       Such conduct—recorded admissions of extrinsic fraud, concealment of due-process
9   violations, and willful cooperation with judicial officers—also constitutes action under color of
10  law for purposes of **42 U.S.C. § 1983.** Attorneys' misconduct was enabled and enforced through
11  administrative state action, converting private misconduct into state-action under § 1983.A private
12  party acts under color of law when he is a "willful participant in joint activity with the State or its
13  agents." ***Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970).** The Supreme Court has
14  squarely held that private attorneys who conspire with a judge to procure a corrupt judgment act
15  under color of state law. ***Dennis v. Sparks,* 449 U.S. 24, 27–28 (1980).** The Fifth Circuit follows
16  this rule, holding that private individuals "who knowingly participate in a scheme with state
17  officials to deprive another of constitutional rights" act under color of law. ***Mylett v. Jeane,* 879
18  F.2d 1272, 1275 (5th Cir. 1989).** This principle traces back to ***United States v. Classic,* 313 U.S.
19  299, 326 (1941),** where the Court defined the phrase broadly to include misuse of power
20  "possessed by virtue of state law and made possible only because the wrongdoer is clothed with
21  the authority of state law."

22      Plaintiff seeks that this Court provide (i) declaration that the January 24, 2019 "Rule 11"
23  agreement and every downstream order are **void ab initio**; (ii) a permanent injunction freezing
24  all wage garnishment and other enforcement mechanisms, correcting arrears filings, and
25  compelling the State Bar to reopen its disciplinary docket; and (iii) compensatory, punitive,
26  treble, and statutory damages commensurate with the economic, reputational, and emotional
27  devastation wrought by Defendants' schemes. While fraud was concealed, Plaintiff lost all
28  savings and retirement assets, his credit scores destroyed, and his reputation and employability
29  damaged. As a father, he lost six years with his daughters, from ages 12-18 and 9-17.

30  **SNAPSHOT OF THE FRAUD CASCADE (2017–2025) FOUND IN "EXHIBIT A":**

| Date | Actor(s) | Fraudulent Act | Immediate Damage / Impact |
|------|----------|----------------|---------------------------|
| 2017-2025 | Willie, Grandinetti, Ms. Graves, judges Sulak/Arth, Sarah Longhofer, Richard Huntpalmer, Stephanie Lowe, CFSD, OAG; All received correspondence and documentation found throughout Exhibit A | **Blind eyes to fraud: abusing and/or allowing aggravated perjury and obvious financial fraud to inflate arrears, while allowing abuse of false evidence to create reports of false arrears on OCSE-157 all while Plaintiff clearly provided support** | Documentation was repeatedly ignored concerning fraudulent arrears, delays were allowed without sanction, aggravated perjury and false evidence concerning support from 2017-2021 created a fraudulent $230,926.29 award in arrears siphoning Title IV-D incentive payments to Texas. Referenced only as motive evidence and not as a |

| | | | privately enforceable right under Title IV-D. |
|---|---|---|---|
| 01/23/2019 | Grandinetti & Willie; | **Grandinetti's ABA Rule 4.2 violation & $20 k bribe demand for expedited trial, quid pro quo was made under threat of delay and concealed from court** | Plaintiff was solicited to liquidate $159 k 401(k) and pay attorneys $20 k under threat of prolonged litigation; child-support hearing canceled, one year stonewall and concealment followed. |
| 01/24/2019 | Willie & Grandinetti; | **Rule 11 forged by attorneys; filed without explicit consent after violation; and Aggravated Perjury** | 03/31/2019 trial delayed by discovery stonewall without sanctions, causing depletion of assets (*Chambers v. NASCO*, 501 U.S. 32, 45-46). |
| 06/22/2021 - 06/23/2021 | Grandinetti, Willie & Ms. Graves; | **Presented forged Rule 11; Grandinetti impugns Plaintiff's testimony, suborns false testimony, then allows aggravated perjury concerning financial and child support paid** | $159 k 401(k) lost, substantial taxes and penalties imposed, $115 k pecuniary interest lost, add'l $85 k awarded, $230 k child support judgment applied by fraud + spiraling debt; custody stripped. Orders are based in extrinsic fraud. |
| 09/2021 - 07/2022 | Judges Sulak, Arth, Willie, Grandinetti, Ms. Graves | **Emails to all parties with proof of financial and child support paid are simply ignored** | Fraudulent, inflated arrears of $230,926.29 applied; siphons significant Title IV-D incentive payments to Texas. |
| 11/2022 - 09/2023 | Grandinetti & Willie | **Attorneys submit general denials. Fraud later admitted by Willie** | Ongoing cover-up; further damages to Plaintiff. Willie confesses 12/06/2023. |
| 12/06/2023 | Willie | **Recorded confession (*after* threats not to expose him again)** | Admission of known Rule 4.2 violation, collusion, perjury, concealment, judicial bias. |
| 05/2022 - 01/2024 | Judges Sulak & Arth | **Ignored email proof (financial documents, text records, recorded financial conversations), failed to investigate fraud, then judges destroy the sworn affidavits, by administrative acts, properly submitted to a clerk of courts which exposed it all** | Evidence spoliation **and administrative interference with court records** bars destruction or concealment of affidavits already lodged with a court and supports due-process and access-to-courts claims where those acts prevent a fair hearing |

| | | | Upholds fraud: "no further review"; administrative cover-up (*Blessing v. Freestone*, 520 U.S. 329), cited here only for the principle that federal courts distinguish between non-enforceable Title IV–D programmatic duties and enforceable constitutional rights. Plaintiff asserts the latter—due process and equal protection injuries caused by misuse of Title IV–D machinery—which fall outside Blessing's bar on private enforcement. |
|---|---|---|---|
| 12/06/2024 - 12/10/2024 | State Bar of Texas | **Bar informed of conscience-shocking fraud, yet refuses to reopen investigation** | |

**LEGAL FRAMEWORK & CAUSES OF ACTION**

**Fifth-Circuit Fraud-on-the-Court Authority:** It is made clear that when counsel's misconduct corrupts the adversarial process, federal courts shall exercise inherent power, and **Rule 60(d)(3)** authority to vacate judgments procured by fraud. See *Oliver v. Home Indem. Co.*, 470 F.2d 329, 331-32 (5th Cir. 1972) (attorney's knowing use of perjured testimony); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5ᵗʰ Cir. 1978) (concealment of critical evidence); *First Nat'l Bank v. Wright*, 52 F.3d 1045 (5ᵗʰ Cir. 1995) (unpub.) (fabricated promissory note); *Diaz v. Methodist Hosp.*, 46 F.3d 492  496-97 (5ᵗʰ Cir. 1995) (intentional withholding of records); and *Cantu v. Central Educ. Agency*, 884 F.2d 562 (5ᵗʰ Cir. 1989) (extrinsic fraud bypasses state appellate posture). *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 873-75 (5ᵗʰ Cir. 1989) (withheld evidence); Therefore the fraud alleged here lies well within this Court's power to remedy.

## COUNT I — 42 U.S.C. § 1983: Due-Process Violations

**Defendants:** Eric M. Willie and Christopher M. Grandinetti (in their individual capacities)

Defendants Willie and Grandinetti acted "under color of state law" within the meaning of 42 U.S.C. § 1983 by willfully participating in joint activity with state officials. See Dennis v. Sparks, 449 U.S. 24, 27–28 (1980) (private attorneys who conspire with a judge to procure a corrupt judgment act under color of law); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (private parties liable under § 1983 where they are willful participants in joint activity with the State); Mylett v. Jeane, 879 F.2d 1272, 1275 (5th Cir. 1989) (private individuals who knowingly participate in a scheme with state officials to deprive constitutional rights act under color of law). Here, the attorney-defendants used forged and fraud-tainted instruments to obtain state-court orders, knowingly relied on those orders to enforce unlawful arrearage and garnishment, and coordinated with judicial officers who, in their administrative capacities,

1  threatened destruction of affidavits and refused to act on evidence of fraud. Those joint acts
2  converted what began as private misconduct into state-action for § 1983 purposes.

3  Plaintiff also submitted evidence of the same extrinsic fraud to the State Bar of Texas, which
4  acknowledged receipt yet declined to review or investigate despite mandatory duties under
5  **TDRPC 8.03(a) and ABA Model Rule 8.3.** This refusal to act, despite credible proof of
6  attorney misconduct, further entrenched the deprivation of due process and equal protection. The
7  Bar's inaction concealed the wrongdoing, corroborated continuing state participation, and
8  extended equitable tolling under *Bailey v. Glover,* **88 U.S. 342 (1874);** *Holmberg v. Armbrecht,*
9  **327 U.S. 392 (1946); and** *Rotella v. Wood,* **528 U.S. 549, 560–61 (2000).**

10  **Protected Interests Deprived:** Plaintiff was deprived of both property and liberty interests
11  without due process of law. *Board of Regents v. Roth,* **408 U.S. 564 (1972);** *Troxel v. Granville,*
12  **530 U.S. 57 (2000).** These interests include cash, savings, retirement funds, home equity,
13  earnings, credit, and family integrity.

14  **Estimated losses:**

15  • **401(k) $159,000 + tax and penalties ≈ $55,900 + growth ≈ $329,900**
16  • **Forced $50,000 IRA liquidation versus transfer of ownership**
17  • **Inflated arrears ≈ $230,000**
18  • **Fraud-induced fees ≈ $200,000**
19  ◦ **Home-equity loss ≈ $400,000**
20  • **Lost earnings ≈ $500,000**

21  **Conscience-Shocking Conduct:** Defendants' conduct — bribery, forgery, fraudulent document
22  submission, perjury, suborned perjury, and concealment of exculpatory evidence — **meets the**
23  *Rochin v. California,* **342 U.S. 165 (1952)** "shocks the conscience" standard. As the Supreme
24  Court recognized, "there was in fact no adversary trial or decision of the issue in the case," as in
25  *United States v. Throckmorton,* **98 U.S. 61, 65–66 (1878).** See *Aoude v. Mobil Oil Corp.,* **892**
26  **F.2d 1115 (1st Cir. 1989)** (fabricated document voids case); *Chambers v. NASCO,* **501 U.S. 32**
27  **(1991)** (inherent authority to sanction litigation fraud); *Hazel-Atlas Glass Co. v. Hartford-*
28  *Empire Co.,* **322 U.S. 238 (1944);** *Rozier v. Ford Motor Co.,* **573 F.2d 1332 (5th Cir. 1978);**
29  *Kupferman v. United States,* **227 F.2d 708 (2d Cir. 1962);** *Oliver v. Home Indem. Co.,* **823**
30  **F.2d 373 (5th Cir. 1987).** Such fraud undermines the integrity of the judicial process itself.

31  **No Meaningful Hearing:** Admitted fraud, false evidence, and suppression of exculpatory
32  material denied Plaintiff a fair opportunity to present his case, violating procedural due process.
33  *Fuentes v. Shevin,* **407 U.S. 67 (1972).** As the Supreme Court held, where "there has never been
34  a real contest in the trial or hearing of the case," equity permits a new action to annul the prior
35  judgment and secure a fair hearing. *United States v. Throckmorton,* **98 U.S. 61 (1878).**

36  **Bias:** Payoffs, admitted ethical violations, specifically ABA Model Rule 4.2, warranting
37  disbarment (*Ohralik v. Ohio State Bar Ass'n,* **436 U.S. 447 (1978)**), coordinated misconduct
38  presenting/allowing false evidence, aggravated perjury, as well as judicial negligence created a
39  constitutionally intolerable "probability of actual bias." *Caperton v. A.T. Massey Coal Co.,* **556**
40  **U.S. 868, 886 (2009).**

1    **Equitable Tolling:** Fraudulent concealment — especially by licensed legal professionals —
2    tolled the statute of limitations until Willie's December 6, 2023, recorded confession and the
3    State Bar's 2024 refusal to act. *Bailey v. Glover,* **88 U.S. 342 (1874);** *Holmberg v. Armbrecht,*
4    **327 U.S. 392 (1946);** *Rotella v. Wood,* **528 U.S. 549, 560-61 (2000);** *King-White v. Humble*
5    *ISD,* **803 F.3d 754 (5th Cir. 2015).**

6    **Relief Requested:** Compensatory and punitive damages; costs and fees under **42 U.S.C. §**
7    **1988;** and any further relief this Court deems just and equitable.

8    ―――――――――――――――――――――――――――――――――――――――――

## 9    COUNT II — Prospective Declaratory and Injunctive Relief

10    **Defendants:** Judges Timothy Sulak and James Arth (official capacities only); CFSD Title IV-D
11    Director (official capacity only); State Bar of Texas Executive Officials (official capacities only)

12    **Jurisdiction and Legal Basis:** Jurisdiction arises under **28 U.S.C. §§ 1331 and 1343(3).**
13    Pursuant to *Ex parte Young,* **209 U.S. 123, 159–60 (1908),** a federal court may grant prospective
14    declaratory and injunctive relief against state officials to halt ongoing constitutional violations.
15    The **Anti-Injunction Act, 28 U.S.C. § 2283,** permits such relief where "expressly authorized"
16    by Congress or "in aid of jurisdiction." Section 1983 is an express authorization within that
17    exception. See *Mitchum v. Foster,* **407 U.S. 225, 242–43 (1972)** (§ 1983 is an "expressly
18    authorized" exception to § 2283). Congress's 1996 amendment to § 1983 limits injunctive relief for
19    acts "taken in [a] judicial capacity." **42 U.S.C. § 1983.** The acts challenged here are *administrative*
20    *and coercive, not judicial,* so the proviso does not apply. See *Forrester,* **484 U.S. at 229;** *Davis,* **565**
21    **F.3d at 222–23.**

22    Judicial immunity does not extend to (1) administrative or ministerial acts, (2) acts in the clear
23    absence of jurisdiction, or (3) participation in a conspiracy to deprive constitutional rights.
24    **Forrester v. White, 484 U.S. 219, 228-30 (1988); Mireles v. Waco, 502 U.S. 9, 12 (1991);**
25    **Rankin v. Howard, 633 F.2d 844, 849 (9th Cir. 1980); Davis v. Tarrant Cty., 565 F.3d 214,**
26    **222-23 (5th Cir. 2009).** Because the judges' actions were administrative and coercive — not
27    adjudicative — they fall outside the functional protection of immunity and instead corroborate
28    that the attorney-defendants acted jointly with state officials for **§ 1983** purposes.

29    **Declaratory Relief:** Plaintiff seeks a declaration that the January 24, 2019 "Rule 11
30    Agreement"— procured through an admitted violation of ABA Model Rule 4.2 and coercive, in-
31    person solicitation of a represented adversary—conduct the Supreme Court has recognized as
32    inherently coercive and disciplinable. See Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 461–
33    68 (1978) (upholding severe discipline, including indefinite suspension, for in-person
34    solicitation) in *Ohralik v. Ohio State Bar Ass'n,* **436 U.S. 447 (1978)**—and fraudulently
35    annexed as legitimate during trial, is void *ab initio.* Plaintiff further seeks a declaration that
36    child-support orders entered on known false evidence are constitutionally invalid. See *Hazel-*
37    *Atlas Glass Co. v. Hartford-Empire Co.,* **322 U.S. 238 (1944);** *Aoude v. Mobil Oil Corp.,* **892**
38    **F.2d 1115 (1st Cir. 1989).**

39    The record includes sworn affidavits lawfully submitted to the clerk of courts and acknowledged
40    by Judges Sulak and Arth. Subsequent letters from those judges intimidated Plaintiff by falsely

1   claiming violations of Rules of Civil Procedure or threatened that Plaintiff either remove the
2   documents from court records or they would be destroyed. Such administrative acts—managing,
3   concealing, or destroying records outside any judicial ruling—are non-judicial functions and fall
4   outside judicial immunity. *Forrester v. White*, **484 U.S. 219, 229 (1988)**; *Davis v. Tarrant Cty.*,
5   **565 F.3d 214, 222–23 (5th Cir. 2009).**

6   Plaintiff's record shows no hearing, motion to strike, or order authorizing destruction.
7   Accordingly, those affidavits must be produced, and any orders derived from the tainted Rule 11
8   Agreement or false evidence declared constitutionally void.

9   **Injunctive Relief:** If declaratory relief is insufficient, Plaintiff requests injunctive orders to:

10  1.  Suspend enforcement of orders and collection mechanisms stemming from fraudulent
11      judgments;
12  2.  Direct the Child & Family Support Division (CFSD) to correct erroneous OCSE-157
13      reports and cease relying on fraud-tainted arrearage data in future certifications and
14      enforcement actions;
15  3.  Declare that state disciplinary authorities may not invoke res judicata to refuse
16      consideration of newly discovered, material evidence of attorney misconduct that results in
17      ongoing constitutional violations; and enjoin enforcement of any policy or practice that
18      bars review of such new evidence.

19  Such relief is authorized under **42 U.S.C. § 1983** and the judicial-capacity proviso for
20  prospective constitutional relief.

21  **Federal Oversight and Integrity of Title IV-D Reporting:** Federal oversight is warranted
22  because the Texas Child & Family Support Division (CFSD/OAG) continues to certify and
23  report child-support arrears that were derived from orders tainted by proven extrinsic fraud.
24  These certifications are used in the calculation of federal incentive payments under 42 U.S.C. §
25  658a. If left uncorrected, such conduct perpetuates the effect of unconstitutional state actions and
26  distorts federally regulated child-support performance data. Accordingly, Plaintiff seeks
27  prospective declaratory and injunctive relief compelling the CFSD/OAG to review and correct its
28  OCSE-157 submissions and ensure future certifications accurately reflect lawful and valid
29  arrearage data. This reference is made solely to establish the federal interest in ensuring the
30  integrity of Title IV-D reporting; no claim is asserted or implied under the False Claims Act.

31  **Federal Jurisdiction Preserved:** This action does not seek appellate review of a state-court
32  judgment but redress for independent federal injuries caused by extrinsic fraud and
33  administrative misconduct, placing it outside the *Rooker–Feldman* doctrine. *Kougasian v.*
34  *TMSL*, **359 F.3d 1136 (9th Cir. 2004);** *Truong v. Bank of Am.*, **717 F.3d 377 (5th Cir. 2013).**
35  No ongoing state proceeding affords an adequate opportunity to address these constitutional
36  violations, and the extraordinary fraud alleged falls within a recognized exception to *Younger*
37  abstention. Prospective relief against state judicial officers is permitted where they act
38  administratively or in clear absence of jurisdiction. *Forrester*, **484 U.S. at 229;** *Mireles v. Waco*,
39  **502 U.S. 9, 12 (1991).**

**Preservation of Rights and Federal Interest:** Plaintiff reserves the right to submit this Complaint and supporting affidavit to the U.S. Department of Justice Public Integrity Section, the Office of Professional Responsibility, and the Texas State Commission on Judicial Conduct for review of potential criminal and ethical violations under **18 U.S.C. § 2071.** A sealed, date-stamped copy in Plaintiff's possession contains notary stamps and certificates of service, and a certified-mail receipt verifies delivery to counsel. Exhibit A includes photographic proof of delivery and audio confirmation. The Judges' letters constitute improper intimidation and administrative tampering with court records—acts beyond the judicial function and thus outside immunity. *Forrester*, 484 U.S. at 229; *Davis*, 565 F.3d at 222–23.

**Relief Requested**

1. Declaratory judgment that the January 24, 2019 Rule 11 Agreement and subsequent orders based on fraud and concealment are *void ab initio*;
2. Declaratory judgment that the removal, threatened destruction, or destruction of lawfully filed affidavits violated Plaintiff's constitutional rights;
3. If declaratory relief is ineffective, injunctive orders as outlined above; and
4. Costs and attorney fees under **42 U.S.C. § 1988,** together with such other equitable relief as this Court deems proper.

**Judicial Review Notes (Appellate Perspective)**

1. **Jurisdiction:** Proper under *Ex parte Young* and § 1331 for prospective relief.
2. **Immunity:** Pierced via administrative acts and clear absence of jurisdiction.
3. **Anti-Injunction Act:** Satisfied under the "expressly authorized" and "in aid of jurisdiction" exceptions.
4. **Rooker–Feldman / Younger:** Inapplicable to extrinsic fraud and federal rights deprivations.
5. **Remedy Scope:** Tailored to halt ongoing constitutional injury without disrupting legitimate state functions.

The declaratory and injunctive relief sought here sets the foundation for Count III, which invokes this Court's inherent power under **Rule 60(d)(3)** to vacate judgments procured by fraud upon the court and to restore the integrity of the judicial process.

## COUNT III — Fraud on the Court ( Fed. R. Civ. P. 60(d)(3) )

*(Defendants Eric M. Willie and Christopher M. Grandinetti — individual capacities)*

**Jurisdiction and venue.** This Court's jurisdiction arises under **28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 1983.** The equitable principles reflected in **Fed. R. Civ. P. 60(d)(3), Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944),** and related authorities inform this Court's inherent power to recognize and remedy fraud upon the judicial process and to decline to give preclusive effect to judgments procured by such fraud. Plaintiff does not seek appellate review of the state-court decree, but alleges independent federal injuries and asks this Court to declare that Defendants may not rely on a fraud-tainted judgment to defeat his

constitutional and statutory claims. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the injuries from the fraud-tainted judgment—wage garnishment, credit damage, loss of home, and interference with professional licensure—were suffered in Montgomery County, within the Houston Division.

**Governing law.** Fraud on the court requires (1) conduct by an officer of the court, (2) directed at the judicial machinery itself, (3) deliberately calculated to mislead, and (4) resulting in the denial of a fair adversarial proceeding. **United States v. Throckmorton, 98 U.S. 61, 65–66 (1878)** (no adversarial trial, unsuccessful party prevented from exhibiting fully his case, false promises of compromise, attorneys conniving at defeat; or where the attorney regularly employed corruptly sells out his client's interest); **Wells, Res Judicata, sect. 499; Pearce v. Olney, 20 Conn. 544; Wierich v. De Zoya, 7 Ill. 385; Kent v. Ricards, 3 Md. Ch. 392; Smith v. Lowry, 1 Johns. (N. Y.) Ch. 320; De Louis et al. v. Meek et al., 2 Iowa, 55, Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989), Oliver v. Home Indem. Co., 470 F.2d 329, 331 32 (5th Cir. 1972)** (attorney's knowing use of perjured testimony); **Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)** (concealment of critical evidence); **First Nat'l Bank v. Wright, 52 F.3d 1045 (5th Cir. 1995) (unpub.)** (fabricated promissory note); **Diaz v. Methodist Hosp., 46 F.3d 492  496 97 (5th Cir. 1995)** (intentional withholding of records); **and Cantu v. Central Educ. Agency, 884 F.2d 562 (5th Cir. 1989)** (extrinsic fraud bypasses state appellate posture); **Wilson v. Johns Manville Sales Corp., 873 F.2d 869, 873 75 (5th Cir. 1989)** (withheld evidence).

**Key findings:** Willie exposes pervasive fraud on the court, substantiating Plaintiff's evidence in Exhibit A which was repeatedly shared with Defendants as proof that these acts were calculated, deliberate, knowingly misleading, directed at the judicial machinery and admittedly resulting in violation of Plaintiff's right to due process. Defendants (1) kept Plaintiff from a child support hearing by violating and concealing ABA Model Rule 4.2 to create a void Rule 11 agreement, submitted as evidence; (2) forgery, Ms. Graves was not informed of communications nor the fraudulent agreement, but abused for false testimony; (3) attorneys admittedly withheld and suppressed exculpatory evidence showing financial and child support paid; (4) suborned perjury from Ms. Graves and abused false/falsified/misleading arrearage reports to establish fraudulent financial obligations by abusing the court's powers of contempt; (5) continued fraudulent concealment and known, allowed certification of fraudulent arrears to the federal government which abuse the judicial machine against a protected member of the public.

**Legal conclusion.** Such extrinsic fraud is condemned in United States v. Throckmorton, 98 U.S. 61 (1878), and Hazel-Atlas, 322 U.S. 238 (1944). Where fraud on the court is established, courts may set aside or refuse to give effect to judgments procured by that fraud and restore the injured party to the position he would have occupied absent the misconduct. See, e.g., Oliver v. Home Indem. Co., 470 F.2d 329, 331–32 (5th Cir. 1972); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).

**Relief.** Declare that enforcement of the orders derived from the fraudulent Rule 11 Agreement and false arrearage evidence violates the Constitution and enjoin their prospective enforcement against Plaintiff unless and until they are corrected in proceedings that are free from the extrinsic fraud described herein.

## COUNT IV — 42 U.S.C. § 1983: Deliberate Non-Response to Verified Fraud Disclosures, Administrative Tampering/Destruction of Evidence, and Conspiracy to Deny Access to the Courts

*(Judges Timothy Sulak and James Arth — official capacities only for prospective relief; Eric M. Willie and Christopher M. Grandinetti — individual capacities for damages)*

**Jurisdiction & Venue.** 28 U.S.C. §§ 1331, 1343. Venue is proper under 28 U.S.C. § 1391(b)(2) because substantial acts and injuries occurred in Montgomery County, Texas, and pervasive concealment and retaliation occurred in Travis County.

**Factual Allegations.**

1. Between 11/2018–12/2024, Plaintiff repeatedly submitted verified disclosures—emails, sworn affidavits (with notary stamps and certificates of service), delivery confirmations, and exhibits—documenting extrinsic fraud by forged "Rule 11" agreement and separately, financial and child support payments made and falsely denied, thus, suppression of exculpatory payment records, aggravated perjury, and falsified arrearage reports abused in official proceedings.

2. All named actors received or acknowledged those disclosures. No motion to strike, hearing, or remedial order issued; instead, enforcement of fraud-dependent orders continued.

3. Judges Sulak and Arth then directed removal and/or threatened destruction of Plaintiff's filed affidavits on the asserted ground of "rule violations," despite notarization and certificates of service—an act of **record-management coercion** that is administrative, not adjudicative.

4. Willie and Grandinetti **coordinated to suppress and discredit** Plaintiff's disclosures and to deter further reporting, including recorded **threats of retaliation** and **misrepresentations** that "there is no civil remedy for fraud," thereby **impeding Plaintiff's ability to timely present his claims to a neutral tribunal**.

5. These acts—threatening removal or destruction of filings; refusing docketing; misdirecting Plaintiff away from available remedies; and coordinating to maintain fraudulent orders—**blocked and/or delayed meaningful access to the courts**, foreseeably causing loss of claims, increased arrears and penalties, and ongoing garnishments.

6. Plaintiff's sworn affidavits were not only lawfully submitted, but each included notarization and certificates of service—hand-delivered to the clerk of courts, and postmarked by USPS certified mail to counsel. Plaintiff audio-recorded delivery at the clerk's window, took geo-located photographic proof, and retains sealed postmarked envelopes confirming delivery attempts and receipt signatures. Judges Sulak and Arth later issued written letters acknowledging receipt—confirming that the court actually obtained, reviewed, and possessed the affidavits—before claiming non-existent "rule violations" and demanding Plaintiff retrieve them or they would be destroyed. The docket contains no adjudicative order to strike or destroy these filings. This establishes not a

25

1  mere failure to review, but affirmative administrative interference with evidence already
2  in the court's custody.

3  **Legal Basis.**

4  - **Administrative/Nonjudicial Acts Not Immune.** Administrative refusal to maintain
5    filings and threats/acts of destruction are **non-judicial** and not covered by absolute
6    judicial immunity. *Forrester v. White*, 484 U.S. 219, 229 (1988); *Davis v. Tarrant Cnty.*,
7    565 F.3d 214, 222–23 (5th Cir. 2009). Prospective relief against state officials is
8    permitted to halt ongoing constitutional violations. *Ex parte Young*, 209 U.S. 123, 159–
9    60 (1908).
10 - **Denial of Due Process / Access to Courts.** Intentional concealment or destruction of
11   evidence that forecloses or **chills** a litigant's meaningful opportunity to be heard states a
12   claim under § 1983. *Ryland v. Shapiro*, 708 F.2d 967, 973–75 (5th Cir. 1983); *Schaper v.
13   City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987).
14 - **§ 1983 Conspiracy to Deny Access.** Private and state actors who **agree** to violate
15   constitutional rights and **commit acts in furtherance** that cause injury are liable for §
16   1983 conspiracy. See *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (agreement +
17   actual deprivation); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (concerted
18   action causing constitutional injury). Here, the facts plausibly show an **agreement**
19   (coordination to remove/destroy affidavits; threats; forwarding "fraud alerts" without
20   inquiry; synchronized refusals to act) and an **actual deprivation** (lost access and ongoing
21   enforcement of fraud-tainted orders).
22 - **Obstruction Allegations as Factual Support.** Conduct resembling obstruction (e.g.,
23   threats, spoliation, concealment) is pleaded **as facts** supporting denial-of-access and **as
24   RICO predicates** in Count V—not as standalone civil claims under federal criminal
25   statutes.

26 **Relief.**
27 **Declaratory:** Administrative refusal to receive/maintain filings and threats/acts of destruction of
28 properly filed affidavits violate the First and Fourteenth Amendments (petition, due process,
29 access).
30 **Injunctive (if declaratory relief is unavailable/ineffective):** (a) Reinstate destroyed/removed
31 affidavits to the docket; (b) enjoin any destruction/suppression of Plaintiff's filings; (c) require
32 equal-terms, non-retaliatory access to filing/docketing procedures; and (d) direct ministerial
33 preservation of all related records. 42 U.S.C. § 1983 (judicial-capacity proviso inapplicable to
34 non-judicial acts).
35 **Damages (Willie & Grandinetti only):** Compensatory damages for pecuniary losses caused by
36 the denial-of-access and destruction/ignoring of filings; costs, and—if represented by counsel—
37 reasonable attorney's fees under § 1988.

38 **Pleading Note (re: former Count VIII).**
39 Plaintiff withdraws the separate § 1985(2) count without prejudice. The same facts are pleaded
40 herein as **§ 1983 denial-of-access and § 1983 conspiracy** and, where applicable, as **RICO
41 predicates** in Count V.

42

1  **COUNT V — Civil RICO (18 U.S.C. §§ 1962(c) & 1962(d))**

2  *(Defendants: Eric M. Willie and Christopher M. Grandinetti (in their individual capacities))*

3  **1. Statutory Framework and Jurisdiction**
4      **a.** Under 18 U.S.C. § 1964(c), any person injured in his business or property by
5      reason of a violation of § 1962 may sue for treble damages, costs, and reasonable
6      attorney fees.
7      **b.** Venue and jurisdiction lie in this District because at least one predicate act—
8      including interstate transmission of forged Rule 11 documents and false OCSE
9      data—occurred within or affected communications into this District.

10  **2A. Persons and Enterprise (§ 1962(c))**

11      **c.** Persons. Willie and Grandinetti are "persons" within the meaning of 18 U.S.C. §
12      1961(3).

13  **2B. Enterprise.** The "Rule 11 / Title IV-D Extortion Enterprise" was an association-in-fact
14      enterprise under § 1961(4), composed of Willie, Grandinetti, and others acting outside
15      their lawful duties within state offices. Its common purpose was to:

16      **d.** extract funds from Plaintiff's retirement accounts through coercion and fraud;
17      **e.** inflate child-support arrears to increase Title IV-D incentive funding; and
18      **f.** obstruct exposure of the fraud through evidence destruction and regulatory
19      inaction.

20  The enterprise is distinct from the defendants who conducted its affairs. *Cedric Kushner*
21  *Promotions v. King,* **533 U.S. 158 (2001).**

22  **Participation of Complicit Officials**

23  In furtherance of the enterprise, certain state-court officials—including Judges Sulak and Arth—
24  performed non-judicial, administrative acts that aided the concealment of predicate offenses.
25  Their letters acknowledging receipt of Plaintiff's sworn affidavits and threatening their removal
26  or destruction were administrative and coercive, not adjudicative, falling outside any protected
27  judicial function.

28  The State Bar of Texas, acting under color of state law and as an administrative arm of the Texas
29  Supreme Court, received excerpts of recordings and documentation confirming attorney
30  admissions to constitutional violations. Despite this knowledge, it claimed no further action
31  would be taken, invoked res judicata and claimed the endorsement of the Texas Supreme Court
32  to foreclose further review. Such deliberate refusal to act, despite possession of proof of extrinsic
33  fraud and criminal conduct, constitutes continuing concealment and obstruction under 18 U.S.C.
34  §§ 1503, 1512, and 1346, furthering the enterprise's racketeering continuity. The Bar's assertion
35  that constitutional violations were "unreviewable" contradicts the Supremacy Clause of the

1  United States Constitution, and its inaction ensured the ongoing deprivation of property and
2  liberty interests secured by the Fourteenth Amendment.

3  All of these acts gave the appearance of legitimacy to the enterprise's fraudulent orders and
4  facilitated continued racketeering activity. Plaintiff relies on this conduct as evidence of
5  enterprise participation and concealment, while reserving individual RICO liability to Willie and
6  Grandinetti. Forrester v. White, 484 U.S. 219 (1988); Davis v. Tarrant Cty., 565 F.3d 214 (5th
7  Cir. 2009).

8  **3. Pattern of Racketeering Activity**

9   Defendants committed at least two predicate acts within ten years, showing relatedness and
10  open-ended continuity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989). Each predicate
11  furthered the continuing scheme to defraud and extort Plaintiff.

| Predicate Statute | Illustrative Factual Allegation |
|---|---|
| 18 U.S.C. § 1341 (Mail Fraud) | Defendants coerced Plaintiff into liquidating his 401(k) based on false representations, and threats of prolonged litigation and contempt and based on ABA Model Rule 4.2 violations. Plaintiff then transmitted executed financial documents, settlement papers, and correspondence through the U.S. Mail to process the coerced liquidation. The mailings furthered Defendants' fraudulent purpose and were essential steps in the scheme to extract Plaintiff's assets. |
| 18 U.S.C. § 1343 (Wire Fraud) | On or about 01/24/2019 and later, Defendants used interstate email and electronic communications to coerce and induce Plaintiff to liquidate his 401(k) account under threat of prolonged litigation and contempt. Plaintiff, relying on these coercive and fraudulent representations (including the ABA Model Rule 4.2 violation), initiated interstate financial transactions and transmitted liquidation instructions by wire to satisfy Defendants' coerced terms. |
| 18 U.S.C. § 1346 (Honest-Services Fraud)— as narrowed by Skilling v. United States, 561 U.S. 358, 408–09 (2010) (limited to bribery and kickbacks) | Defendants and cooperating actors deprived Plaintiff of the intangible right to honest judicial services through a quid-pro-quo bribery/kickback arrangement (payment to expedite/shape proceedings) and nondisclosure of the conflict. |
| 18 U.S.C. § 1951 (Hobbs Act Extortion) | Obtained 401(k) proceeds by ABA Rule 4.2 violation and threatened prolonged litigation and contempt exposure. The coerced liquidation involved retirement accounts held by interstate financial institutions and required interstate wire transfers, thereby affecting commerce within the meaning of the Hobbs Act. |

| 18 U.S.C. §§ 1503 & 1512 (Obstruction / Witness Tampering) | Abused known false government records and induced perjury concerning the same to impede inquiry, followed by threats Plaintiff withdraw affidavits of they would be destroyed; concealed court-filed evidence. |
| --- | --- |
| Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) | Confirms mail and wire fraud predicates apply even where false statements target third parties such as courts or agencies. |

**4. Continuity and Common Purpose**

The enterprise functioned as a continuing unit with a shared objective of concealing extrinsic fraud and extracting Plaintiff's assets. Boyle v. United States, 556 U.S. 938 (2009). The scheme continues through ongoing certification of false arrears by CFSD to secure federal Title IV-D funds, demonstrating open-ended continuity. Sedima v. Imrex Co., 473 U.S. 479 (1985); Crowe v. Henry, 43 F.3d 198 (5th Cir. 1995).

**5. Causation and Injury**

Plaintiff was the direct and intended target of the racketeering scheme; no intermediary injury stands between Defendants' acts and Plaintiff's losses. Holmes v. SIPC, 503 U.S. 258 (1992).

| Category | Approx. Amount | Causation Summary |
| --- | --- | --- |
| 401(k) liquidation | $159,000 + $55,900 tax/penalty + $115,000 growth | Funds wired through interstate custodians under threat of contempt. |
| Inflated arrears | $230,926 | False Title IV-D certifications based on forged Rule 11 order. |
| Fraud-induced fees | $200,000 | Payments extracted by threat of sanctions. |
| Forced home-equity loss | ≈ $400,000 | Sale compelled to satisfy fraudulent order. |
| Lost earnings / credit harm | ≥ $500,000 | Defamation and credit impairment flowing from fraudulent judgments. |

**6. RICO Conspiracy (§ 1962(d)):** Willie and Grandinetti knowingly agreed and intended to further the enterprise's unlawful objectives, as shown by Willie's recorded admissions and their coordinated concealment of fraud from the court and regulators. No overt act beyond the § 1962(c) predicates is required. Salinas v. United States, 522 U.S. 52 (1997).

**7. Statute of Limitations and Tolling:** The four-year civil RICO limitations period was tolled by fraudulent concealment until Willie's December 6, 2023 recorded confession and the State Bar's 2024 refusal to act. Rotella v. Wood, 528 U.S. 549 (2000); Holmberg v. Armbrecht, 327

U.S. 392 (1946); Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997). Plaintiff exercised reasonable diligence through continuous complaints and documented submissions to authorities.

**8. Relief Requested (18 U.S.C. § 1964(c))**

1. Treble damages for all property losses;

2. Costs of suit and reasonable attorney's fees under 18 U.S.C. § 1964(c) (or, if pro se throughout, a statutory fee equivalent as compensatory damages, if available);.;

3. Pre- and post-judgment interest; and

4. Any further equitable relief (including constructive trust and disgorgement) the Court deems just.

---

# COUNT VI — Texas Civil Conspiracy, Commercial Bribery, and Fraudulent Securing of Document Execution

**Defendants:** Eric M. Willie & Christopher M. Grandinetti

## Legal Authority

This claim arises under:

- Tex. Penal Code §§ 32.43, 32.46 (Commercial Bribery; Fraudulent Securing of Document Execution) — cited as defining unlawful conduct and evidencing Defendants' knowing, intentional wrongdoing; and
- Texas common-law civil conspiracy and fraud, which provide a civil remedy where two or more persons agree to accomplish an unlawful purpose or a lawful purpose by unlawful means and commit one or more overt acts causing damages. See Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996).

## Factual Allegations

Willie's recorded admission on 12/06/2023, substantiates cooperative acts known to conceal and annex a resulting fraudulent Rule 11 "Agreement" as evidence in Exhibit A, establishes:

1. **Violation of ABA Model Rule 4.2, Solicitation & Acceptance of a Bribe**
   While representing Ms. Graves, Grandinetti directly contacted Plaintiff—then represented by counsel, Willie—to solicit the liquidation of Plaintiff's 401(k) account. This impermissible contact violated ABA Model Rule 4.2, a breach recognized by the Supreme Court as coercive and discipliable. Willie has admitted this occurred.
2. **Acceptance of Bribe, Theft by Coercion and Fraudulent Document Execution**
   - Plaintiff was coerced into liquidating his 401(k) under threat of **prolonged litigation, escalating legal costs, and adverse rulings**.

- o Within 22 hours and without explicit consent, a fraudulent agreement was signed only by attorneys and filed with the district clerk. Willie finally admitted this occurred in a recording but had presented the document in court as legitimate..
- o Based on the illegal solicitation, acceptance and coercion to pay $20,000 for expedited trial, both Willie and Grandinetti, knowing their conduct violated professional rules and Texas criminal statutes, then concealed their acts.
- o Testimony and emails to all parties exposed this, as did affidavits to all, but the judge ultimately ignored lawfully submitted affidavits.

3. **Extortion Through Threat of Prolonged Litigation**
Defendants had weaponized the litigation process to compel compliance, extending proceedings, inflating costs, and fabricating filings to maintain pressure until Plaintiff capitulated to the coerced 401(k) liquidation and signed under false pretenses.

4. **Predicate Offense — Fraudulent Securing of Document Execution (Tex. Penal Code § 32.46)**
Defendants caused Plaintiff—without effective consent and with intent to defraud—to execute documents affecting his pecuniary interest, including the coerced 401(k) liquidation forms and the forged Rule 11 agreement. They further induced the filing of these documents in court under false pretenses to obtain unlawful financial benefit.

5. **Knowing and Intentional Misconduct**
The bribery, coercion, fraudulent document execution, and use of perjured testimony were part of a sustained agreement to corrupt the judicial process and unlawfully enrich Defendants.

6. **Cross-Link to Fraud on the Court (Count III)**
The fraudulent Rule 11 agreement, obtained through the acts described here, is the same forged document that forms the centerpiece of **Count IV**. In Count IV, its use is pleaded as an overt act of fraud on the court under Fed. R. Civ. P. 60(d)(3). In this Count, its procurement is pleaded as a predicate offense under Texas criminal law supporting civil conspiracy and treble damages.
   - o **Legal Distinction:** Count IV seeks relief inherent in the Court's equitable powers (vacatur, injunction, sanctions) for corruption of judicial proceedings; this Count seeks statutory treble damages and costs under the Texas Civil Remedies Act for the underlying criminal acts that made the fraud possible.
   - o **Mutual Reinforcement:** Proof that Defendants procured the fraudulent Rule 11 agreement through bribery, coercion, and fraudulent document execution necessarily reinforces the fraudulent-intent element in Count IV. Conversely, proof that the agreement was used to corrupt the judicial process reinforces the "knowing and intentional" element here.
   - o This linkage ensures that dismissal of one Count does not negate the independent legal sufficiency of the other.

7. **Fraudulent Concealment and Limitations Tolling**
The two-year Texas limitations period is tolled under the doctrine of fraudulent concealment until Willie's recorded confession on December 6, 2023, which first fully revealed the coordinated nature of the scheme.

## Civil Conspiracy Under Texas Common Law

Texas law recognizes civil conspiracy where there is:

1.  A combination of two or more persons; Here, Willie and Grandinetti
2.  An object to be accomplished; Here, Obtain unlawful financial benefit through bribery, extortion, fraudulent document execution, and suppression of exculpatory evidence.
3.  A meeting of the minds; Here, Agreement to coerce liquidation of Plaintiff's 401(k), fabricate a Rule 11 agreement, and perpetuate litigation to maintain pressure, never informing Ms. Graves that the 401(k) was liquidated, but abusing her false testimony.
4.  One or more unlawful overt acts; Here, solicitation and acceptance of funds, forging and filing of improperly obtained and fraudulent documents, subornation of perjury, and misrepresentation to the court, fraudulent concealment of the act from regulators.
5.  Damages. As detailed in Counts I and IV—401(k) loss, taxes/penalties, inflated arrears, attorneys' fees, lost equity, and lost earnings. See *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).

## Relief Entitled Under Texas Law

Because commercial bribery and fraudulent securing of document execution are enumerated "unlawful acts" under Chapter 134, Plaintiff is entitled to:

1.  Actual damages for all pecuniary losses described in Counts I and III;
2.  Exemplary damages under Texas law based on Defendants' malice and conscious indifference;
3.  Court costs and, if represented by counsel, reasonable attorney's fees to the extent permitted by Texas law (including through parallel breach-of-fiduciary-duty or fraud claims).

## Relief Requested

Plaintiff requests that the Court:

1.  Enter judgment for treble the actual damages proved at trial;
2.  Award costs of court and the statutory equivalent of reasonable attorney's fees;
3.  Award pre- and post-judgment interest;
4.  Grant any further equitable relief the Court deems just and proper to deter similar misconduct and protect the integrity of judicial proceedings.

## Judicial Note on Abuse of Process

If proven, this conduct demonstrates a deliberate **weaponization of the judicial process** to compel the execution of documents by fraud, coercion, and extortion. Such acts constitute a direct assault on the rule of law, undermine the profession's integrity, and merit not only treble damages but also referral for criminal prosecution and disbarment.

**EXHIBIT INDEX & AUTHENTICATION**

- **Exhibit A – Comprehensive Chronological Binder**

    o *Part 1 – 2019 Rule 4.2 Violation, 401(k) Fraud & Misconduct (Page 90-151)*

        - Introduction (p. 1)
        - Hearing was set for child support, Grandinetti keeps Plaintiff from court (p. 90)
        - Financial duress known by Grandinetti from mediation 60 days prior (p. 91)
        - Proof of income to pay support, new job, Plaintiff offers support (pp. 92-94)
        - Ms. Graves exposes forgery ("agreement" created without her knowledge) (p. 98)
        - Plaintiff's testimony impugned, Plaintiff silenced to conceal fraud (p. 99)
        - Taxes & Penalties as consequences of "liquidation," not a QDRO (p. 100)
        - Plaintiff's testimony impugned while exposing Grandinetti violation (p. 102)
        - No litigant signatures as attorneys claimed on Rule 11 "Agreement" (pp. 103-107)
        - More abuse of Ms. Graves ignorance to garner fraudulent awards (pp. 109-112)
        - Damages summary (pp. 117-119)
        - Plaintiff exposes ABA Rule 4.2 violation three times post-trial (pp. 120-121)
        - Procedural weapons, costly delays, discovery stonewall for one year (pp. 125-139)
        - Audio recorded proof 401(k) was to be transferred by QDRO (pp. 145-151)

    o *Part 2 – Financial & Child-Support Fraud, Fraudulent Arrears, & Title IV-D Incentive Abuse (Fraud: Pages 14-24, 34-88, 153-270)*

        - Proof of extensive discovery and admitted review by opposing party (pp. 14-24)
        - **Ms. Graves commits aggravated perjury concerning financial support which garners arrears ordered based on fraud (pp. 34-88)**
        - 2020 monthly child support orders and Willie guides to pay directly (pp. 153-154)
        - Foresight into damages due to Ms. Graves' aggravated perjury (p. 155)
        - Ms. Graves accepts agreement for direct child support payments (pp. 156-163)
        - 1st warning: Willie directed to correct OAG record: proof provided (p. 164)
        - **Proof of payments sent to OAG, and Grandinetti violates Candor Rule (p. 165)**
        - 2nd warning: Willie directed to correct OAG record: proof provided (p. 166 )
        - Grandinetti files false motion to compel (p. 167)
        - 3rd warning: Willie directed to correct OAG record, damage: proof (p. 168)
        - Judge Arth reduces child support to $1,000/mo. (pp. 170)
        - **Grandinetti omits judge Arth's reduction in the summary (pp. 171-172)**
        - Grandinetti exposes his omission of judge's order as purposeful (p. 174)
        - Continued record of child support payments (pp. 175-177)
        - 4th warning: Willie directed to correct OAG record, damages: proof (pp. 178-179)
        - Ms. Graves continues acknowledging receipt of child support (pp. 181-187)
        - List of emails, recordings and proof that everyone knew of issues (pp. 189-191)
        - Judge Arth asked to intervene, alerts attorneys to child support issues (pp. 190-191)
        - **Income and OAG guidance versus child support awarded by Sulak (p. 193)**
        - Employability damages, credit ruined, no help from anyone (pp. 194-198)
        - Grandinetti fraudulently claims earning power is strong (pp. 199-204)

- **EMAILS PROVE ATTORNEYS AND MS. GRAVES RECEIVED PROOF OF FRAUD, GRANDINETTI LIES ABOUT CHILD SUPPORT (pp. 205-212)**
- 5th warning: Willie directed to correct OAG record and file a motion to determine arrearage...abandons Plaintiff (pp. 216-218)
- Attorneys feign confusion, blame litigants, **withhold & conceal evidence, allow major fraud against the US government (pp. 223-232)**
- A reminder of financial support, Rule 11, and child support fraud (pp. 234-236)
- Judge Sulak exposed as having received proof of Grandinetti's fraud (pp. 243-245)
- Chambers v. NASCO case law showing court did not follow 28 USC 1927 and Fed Rule Civ. Proc. 11, 16(f), 26(g) after vexatious litigation and delays (pp. 239-241)
- **JUDGE SULAK RECEIVES EMAIL, ALL PARTIES PROPERLY COPIED, CONTAINS PROOF OF GRANDINETTI'S RECEIPT OF PROOF OF CHILD SUPPORT PAID (pp. 243-245)**
- **Willie abandons Plaintiff,** condescends, abdicates duty, refuses to remove himself as attorney, refuses to provide documents, allows $230,000 in fraud (pp. 246-247)
- **Email to OAG** proves receipt of proof of fraud...again (p. 248)
- **Willie AGAIN abdicates duty** to Plaintiff, condescends, abandons (p. 249)
- OAG receives proof of fraud (p. 248)
- **GRANDINETTI ABUSES WILLIE'S ABSENCE AND A FRAUDULENT GOVERNMENT RECORD, LIES TO THE JUDGE ABOUT POSSESSION OF PROOF OF CHILD SUPPORT PAYMENTS (pp. 251-270)**
  - o Grandinetti abuses known false evidence (p. 252)
  - o Judge Sulak acknowledges Willie's absence, proceeds (p. 253)
  - o Substitute attorney for Willie begs for reset (p. 254-255)
  - o Judge Sulak's makes decision based on FRAUD (p. 256-257)

- **JUDGE SULAK ACKNOWLEDGES RECEIPT OF PROOF OF GRANDINETTI'S FRAUD, THAT THE EMAIL WAS COPIED TO ALL PARTIES, STILL ASSIGNS FRAUDULENT DEBT TO PLAINTIFF (p. 257)**
  - o Judge Sulak allows fraud to override justice (p.258-270)

- o *Part 3 – Child Custody; Lost by Suborned Aggravated Perjury:* Audio recordings prove a father lost more custody by egregious, suborned aggravated perjury by Grandinetti ("I have heard all of the recordings") in collusion with Ms. Graves, child-manipulation, causing further Title IV-D fraud (pp. 271-311)

  - Judge Arth is informed of financial fraud, psychological abuse of children, and a financial emergency (pp. 312-314)

- o *Part 4 – Post-trial exposure of Fraud Upon the Court, materiality, appeal*

  - Judge Sulak's NUMEROUS recognitions of delays he allowed without sanctions, relies on testimony versus physical evidence (bias exposed), (pp. 221, 225, 228, 231, 244, 251, )
  - Judge Arth receives MORE in-depth proof of fraud upon the court (pp. 312-314)

- Judge Sulak exposes the materiality of "undue influence" by fraud, **HOLDS SECOND HEARING WITHOUT WILLIE, CLOSES CASE** (pp. 315-320)
- **Appeal,** Willie is paid yet conceals fraud (Honest Services Fraud) (pp. 321-323)
- Willie tolls fraud by concealment again, directing Plaintiff to delay (p. 331)

   o *Part 5 – Attorneys toll fraud upon the court by denial to State Bar; concealment*

- Grandinetti gives a "General Denial" to the State Bar (pp. 324-326)
- State Bar of Texas receives substantial proof of fraud (pp. 327-328)
- State Bar of Texas dismisses cases against Willie/Grandinetti (pp. 332-333)
- State Bar decision appealed (p. 334)

   o *Part 6 – Affidavits properly filed, 1ˢᵗ to clerk, 2ⁿᵈ and 3ʳᵈ destroyed by judges*

- July 7, 2023 affidavit filed with the Travis County district clerk (pp. 329-330)
- November 7, 2023 ANOTHER affidavit filed directly with judges (pp. 335-338)
- November 29, 2023, Willie asked to expose fraud upon the court (pp. 359-360)
- December 5, 2023, judge Sulak threatens to destroy evidence in administrative act (pp. 350-352) and destroys affidavit on December 21, 2023 without an order
- January 2, 3, 2024, NEW affidavits delivered to judges and attorneys (pp. 353-356)
- January 4, 2024, judge Arth threatens destruction of affidavit (pp. 357-358)
- DOCKET: No hearing, no motion to strike/destroy – affidavit destroyed (p. 359)

   o *Part 7 – WILLIE'S ADMISSION TO, AND OF, FRAUD UPON THE COURT*

- **DECEMBER 6, 2023, SWORN TRANCRIPT OF WILLIE'S ADMISSION OF FRAUD UPON THE COURT, KNOWN AND ALLOWED (pp. 341-349)**

   o *Part 8 – The State Bar receives excerpts of Willie's confession, refuses to reopen*

- State Bar receives excerpts of Willie's quotes, refuses to reopen investigation although Civil Rights violations, NO ONE WILL HELP (pp. 329-330)

## Declaration of William L. Graves III Pursuant to 28 U.S.C. § 1746

I, William L. Graves III, declare under penalty of perjury that:

1. I am the Plaintiff in this action and have personal knowledge of the facts set forth herein.
2. Attached Exhibits A, Parts 1-8 are true and correct copies of recordings, transcripts, emails, bank statements, court filings, and other documents that I obtained, created, or received.
3. Each screenshot faithfully reproduces the corresponding original document in my possession; no alteration has been made other than redaction of personal identifiers and placement of text boxes for narrative text describing events and/or provision of electronic file names.
4. Narrative text within the binders accurately describes the sequence of events I witnessed.
5. I will make original documents available or file certified copies upon the Court's order.

Executed December 5, 2025, in Montgomery County, Texas.

1    WILLIAM L. GRAVES III
2    Plaintiff

3    **DEMAND FOR JURY TRIAL**

4    Plaintiff demands trial by jury on all issues so triable.

5    **VERIFICATION**

6    Executed December 5, 2025.

7    WILLIAM L. GRAVES III 31271 Shady Arbor Ln. Spring, TX 77386
8    (512) 638-1508   billgraves0911@gmail.com

9    **CERTIFICATE OF SERVICE**

10    I certify that a true and correct copy of this Complaint was served upon all Defendants via
11    certified mail, return receipt requested, on December 5, 2025.

12    Respectfully submitted,

13

14

15    /s/ William L. Graves III
16    William L. Graves III
17    31271 Shady Arbor Ln.
18    Spring, TX 77386
19    (512) 638-1508
20    billgraves0911@gmail.com
21    Pro Se Plaintiff